UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

WILLIAM DUNNEGAN,                          :

                            Plaintiff,   :

             -against-                     :                    20 Civ. 2418

220 EAST 54th STREET OWNERS, INC.,    :

                       Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## COMPLAINT

Plaintiff William Dunnegan ("Dunnegan"), by his undersigned attorneys, for his complaint against defendant 220 East 54th Street Owners, Inc. ("220 Owners"), alleges:

### Nature of the Action

1.     Dunnegan is a shareholder of 220 Owners, a co-op apartment building. Dunnegan owns "unsold shares" that are allocated to two apartments.  The governing documents of 220 Owners, including the Offering Plan and Proprietary Lease ("Governing Documents"), entitle owners of "unsold shares" to certain valuable rights.  These rights include the right to sublet the apartments without the consent of 220 Owners.

2.     On March 2, 2020, 220 Owners purported to make certain unilateral modifications to the Governing Documents that, among other things, extinguished the rights of owners of "unsold shares," including Dunnegan, on the ground that they were "void as against public policy" ("March 2 Unilateral Modifications").  By making the March 2 Unilateral Modifications to the Governing Documents, 220 Owners (a) breached its contract with, and breached its fiduciary duty to, owners of "unsold shares," and (b) acted in violation of a

declaratory judgment that ended a prior lawsuit between Dunnegan and 220 Owners ("2006 Declaratory Judgment").

3.     Dunnegan is therefore bringing this action to obtain (a) a declaration that 220 Owners acted unlawfully in making the March 2 Unilateral Modifications, (b) an injunction restraining 220 Owners from taking any action inconsistent with the Governing Documents or the 2006 Declaratory Judgment, and (c) a monetary judgment against 220 Owners based upon its unlawful actions.

Jurisdiction and Venue

4.     This Court has subject matter jurisdiction over each of the claims in this action based upon 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties to this action and the amount in controversy exceeds $75,000 exclusive of interests and costs.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because 220 Owners resides in this District.

6.     This Court has personal jurisdiction over 220 Owners pursuant to New York CPLR § 301 because 220 Owners owns real property in this State.

Background of this Action

A.     The Parties.

7.     Dunnegan is natural person and a citizen of the State of New Jersey, residing in Ho-Ho-Kus, New Jersey.  Dunnegan is, and has been since June 2, 1981, a member of the Bar of this Court.

2

8.      220 Owners is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York.  220 Owners owns the real property located at 220 East 54th Street, New York, New York.

B.      The Conversion of the Premises at 220 East 54th Street to a Co-op.

9.      On or about August 14, 1981, as a result of an Offering Plan approved by the Attorney General of the State of New York, the premises located at 220 East 54th Street, New York, New York, converted from a rental property to a co-op.

10.     In accordance with the Offering Plan, the Sponsor, 220 East 54th Street Co., owned all the shares of 220 Owners and offered to sell to each existing rent-controlled or rent-stabilized tenant the shares of 220 Owners and assign the proprietary lease associated with the apartment in which the tenant resided.  If the tenant did not accept the Sponsor's offer, the Sponsor retained the right to sell "unsold shares" allocable to the apartments to investors, who would own those "unsold shares" and the proprietary lease associated with the apartment subject to the rights of the rent-controlled or rent-stabilized tenant of the apartment.

11.     To induce investors to purchase the "unsold shares" and the proprietary lease associated with an apartment, the Governing Documents provided certain rights to purchasers of "unsold shares," including the right to sublet the apartment (after the rent-stabilized or rent-controlled tenant vacated it) without the approval of 220 Owners.  A copy of the relevant pages of the Offering Plan is attached as Exhibit A.  The Sponsor thereafter sold the "unsold shares" to investors.

C.      Dunnegan's Purchase of the "Unsold Shares" allocated to Apartment 6L.

12.     On or about December 3, 1986, Dunnegan purchased 49 "unsold shares" of 220 Owners that were allocated to the proprietary lease for an apartment located at 220 East 54th Street, New York, New York ("Apartment 6L"), subject to the rights of the rent-stabilized tenant for the apartment.  Apartment 6L is a studio apartment.

13.     The rent-stabilized tenant remained in occupancy, paying below market rent, until on or about June 1989.  At that time, the tenant surrendered all rights concerning Apartment 6L.

14.     Dunnegan thereafter sub-leased Apartment 6L, under a series of sub-leases, with the knowledge of 220 Owners, but without requesting its consent, because its consent was not required under the Governing Documents.

15.     Dunnegan intends to continue to rent Apartment 6L indefinitely.

D.      Dunnegan's Contract to Purchase the "Unsold Shares" Allocated to Apartment 12A.

16.     On or about May 2005, Dunnegan entered into a contract to purchase 150 "unsold shares" of 220 Owners that were allocated to an apartment located at 220 East 54th Street, New York, New York ("Apartment 12A"), subject to the rights of the rent-controlled tenant. Apartment 12A is a two bedroom/two bath apartment.

17.     Upon Dunnegan informing 220 Owners that he had purchased the Unsold Shares allocated to Apartment 12A, 220 Owners represented to Dunnegan that it would not approve him as a purchaser, even though Dunnegan was an existing shareholder in 220 Owners.  220 Owners ultimately informed Dunnegan that 220 Owners would not approve his purchase because it would make Dunnegan one of the largest, if not the largest, shareholder of 220 Owners.

E.    The Prior Litigation and the 2006 Declaratory Judgment.

18.    On or about August 2005, Dunnegan, and the seller of the "unsold shares" for Apartment 12A, sued 220 Owners in the Supreme Court of the State of New York for the County of New York. The complaint alleged that 220 Owners had breached its fiduciary duty to Dunnegan and to the seller.

19.    The parties settled the action by consenting to the Court's entry of the 2006 Declaratory Judgment, filed January 3, 2006, which provided in applicable part:

> "ORDERED, ADJUDGED and DECREED that the shares of [third party] in [220 Owners] allocated to apartment 2H and **the shares of Dunnegan in [220 Owners] allocated to apartments 12A and 6L**, on the date hereof (i) are Unsold Shares within the meaning of paragraph 38 of the proprietary leases of [third party] and Dunnegan, and (ii) **may be assigned or sublet without any consent of [220 Owners], including its Board of Directors, Shareholders and Managing Agent and without payment of any discriminatory fee** by [third party] or Dunnegan to [220 Owners] or its Managing Agent, provided that [third party] or Dunnegan, as the case may be, are not then in default under the provisions of their respective proprietary leases…" (Emphasis added.)

A copy of the 2006 Declaratory Judgment is annexed as Exhibit B.

20.    In connection with the consent to the 2006 Declaratory Judgment, Dunnegan completed his purchase of the "Unsold Shares" allocated to Apartment 12A.

21.    The rent-stabilized tenant remained in occupancy, paying below market rent, until in or about June 2012.

22.    In or about June 2012, the rent-controlled tenant surrendered all rights concerning Apartment 12A.

23.    Dunnegan thereafter sub-leased Apartment 12A with the knowledge of 220 Owners, but without its consent, because its consent was not required under either the Governing Documents or the 2006 Declaratory Judgment.

24.    Dunnegan intends to continue to sublease Apartment 12A indefinitely.

5

F.      The March 2 Unilateral Modifications.

25.     On March 5, 2020, Dunnegan received an e-mail from the managing agent of 220 Owners, that provided:

> "In light of a recent appellate court decision in our jurisdiction and governing statute, [220 Owners] is now obligated to treat all shareholders equally with respect to subletting, including the assessment of fees.
>
> **The exemptions once enjoyed by holders of unsold shares, pursuant to paragraph 38 of the co-op's proprietary lease have been deemed void as against public policy.** Consequently, the board has recently amended its sublet policy to reflect this change, including the consent requirements and assessment of fees on all subletting shareholders, including holders of unsold shares.
>
> The board resolution ratifying this amendment of the sublet policy along with other recent amendments is enclosed or attached herein." (Emphasis added.)

A copy of this e-mail, with its attached Secretary's Certification and House Rules, is annexed as Exhibit C.

26.     On March 10, 2020, Dunnegan e-mailed the managing agent of 220 Owners, requesting that she identify the "recent appellate court decision" referenced in her e-mail.

27.     On March 11, 2020, Dunnegan received in response an e-mail from Andrew Stern, Esq., an attorney for 220 Owners, that attached a copy of *Pastena v 61 W. 62 Owners Corp.*, 169 A.D.3d 600 (1st Dep't 2019), and identified it as the "recent appellate court decision" referred to in the earlier e-mail. This was a one-page memorandum decision from February 26, 2019, more than a year before 220 Owners unilaterally modified the Governing Documents. The one sentence in *Pastena* that dealt with "public policy" was either an alternative holding or *dicta*.

28.     In making its March 2 Unilateral Modifications of the Governing Documents, 220 Owners breached its contractual and fiduciary obligations to Dunnegan and other owners of "unsold shares."

A FIRST CLAIM FOR RELIEF
(Breach of Contract with respect to the Governing Documents)

29.    Dunnegan repeats the allegations set forth in paragraphs 1 through 28 above with the same force and effect as if set forth in full.

30.    The Governing Documents constitute a contract between 220 Owners and its shareholders, including Dunnegan.

31.    The Governing Documents are valid and enforceable in all respects, and are not in any respect "void as against public policy."  Alternatively, assuming *arguendo* that a portion of the Proprietary Lease is "void as against public policy" because it treats holders of "unsold shares" differently than other shareholders, it is 220 Owners that has made a unilateral choice to (a) eliminate the contractual rights of holders of "unsold shares" rather than (b) grant other shareholders the same rights as holders of "unsold shares."  220 Owners cannot, by its unilateral choice, increase its own contractual rights to the detriment of owners of "unsold shares."

32.    The March 2 Unilateral Modifications are a breach of contract contained in the Governing Documents.

33.    Dunnegan is entitled to a declaration that the March 2 Unilateral Modifications are a breach of contract, and unlawful.

34.    If 220 Owners takes any action based upon the March 2 Unilateral Modifications, in a breach of contract formed by the Governing Documents, Dunnegan will sustain irreparable injury, for which a monetary judgment will not be a sufficient remedy.  Dunnegan is therefore entitled to an injunction restraining 220 Owners from taking any action as a result of the March 2 Unilateral Modifications.

7

Alternatively, Dunnegan is entitled to a monetary judgment for the damages he has sustained, or will in the future sustain, as a result of the breach of contract by 220 Owners with respect to the Governing Documents.

A SECOND CLAIM FOR RELIEF
(Breach of Contract with respect to the 2006 Declaratory Judgment)

35.    Dunnegan repeats the allegations set forth in paragraphs 1 through 34 above with the same force and effect as if set forth in full.

36.    The March 2 Unilateral Modifications are in violation of Dunnegan's rights set forth in the 2006 Declaratory Judgment.

37.    In the lawsuit that led to the 2006 Declaratory Judgment, 220 Owners did not challenge the legality of Dunnegan's rights as an owner of "unsold shares," based upon public policy or otherwise.  Rather, 220 Owners and Dunnegan contracted that Dunnegan was an owner of "unsold shares" and that:

> "**the shares of Dunnegan in [220 Owners] allocated to apartments 12A and 6L**, on the date hereof (i) are Unsold Shares within the meaning of paragraph 38 of the proprietary leases of [third party] and Dunnegan, and (ii) **may be assigned or sublet without any consent of [220 Owners], including its Board of Directors, Shareholders and Managing Agent and without payment of any discriminatory fee**…" (Emphasis added.)

38.    The March 2 Unilateral Modifications are, at least with respect to Dunnegan, a breach of the contract set forth in the 2006 Declaratory Judgment.

39.    Dunnegan is therefore entitled to a declaration that the March 2 Unilateral Modifications are a breach of the contract set forth in the 2006 Declaratory Judgment.

40.    Alternatively, Dunnegan is entitled to a monetary judgment for the damages he has sustained, or will sustain, as a result of the breach of contract by 220 Owners with respect to the 2006 Declaratory Judgment.

8

## A THIRD CLAIM FOR RELIEF
(Breach of Fiduciary Duty)

41.   Dunnegan repeats the allegations set forth in paragraphs 1 through 40 above with the same force and effect as if set forth in full.

42.   220 Owners owes a fiduciary duty to Dunnegan as a result of his status as a shareholder of a closely held corporation.

43.   220 Owners, through its Board of Directors, has breached its fiduciary duty to Dunnegan as a result of the intentional violation of Dunnegan's rights under the Governing Documents and the 2006 Declaratory Judgment.

44.   As a result of the breach of fiduciary duty, Dunnegan is entitled to recover damages, whether compensatory and/or punitive, as appropriate.

WHEREFORE, Dunnegan demands judgment against 220 Owners:

(a)   Declaring that the March 2 Unilateral Modifications violated the rights of Dunnegan under the Governing Documents and the 2006 Declaratory Judgment;

(b)   Enjoining 220 Owners and its officers, agents, servants, employees and attorneys and those other persons in active concert or participation with any of them from impairing the rights of Dunnegan in the Governing Documents and the 2006 Declaratory Judgment;

(c)   Awarding Dunnegan damages, whether compensatory or punitive, as appropriate, to remedy the breaches of contract and/or breaches of fiduciary duty of 220 Owners;

(d)   Awarding Dunnegan the costs of the action, including reasonable attorneys' fees; and

(e)     Granting such other and further relief as to this Court may seem just and proper.

Dated:  New York, New York
        March 19, 2020

DUNNEGAN & SCILEPPI LLC

By_____
   Laura Scileppi (LS0114)
   ls@dunnegan.com
   Richard Weiss (RW4039)
   rw@dunnegan.com
Attorneys for the Plaintiff
350 Fifth Avenue, 76th Floor
New York, New York 10118
(212) 332-8300

10