**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WILLIAM DUNNEGAN,

                             Plaintiff,

        -against-

220 EAST 54TH STREET OWNERS, INC.,

                             Defendant.

20 Civ. 2418 (GBD)

**ORAL ARGUMENT REQUESTED**

**DEFENDANT 220 EAST 54TH STREET OWNERS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Andrew D. Stern
Moshe Bobker
TANE WATERMAN & WURTZEL, P.C.
120 Broadway, Suite 948
New York, New York 10271
Tel: (212) 766-4000
Fax: (212) 766-4022
astern@tww.nyc
mbobker@tww.nyc

Emil A. Samman
Jason Goodman
ROMER DEBBAS LLP
275 Madison Avenue, Suite 801
New York, New York 10016
Tel: (212) 888-3100
Fax: (212) 888.3201
esamman@romerdebbas.com
jgoodman@romerdebbas.com

*Counsel for*
*220 East 54TH Street Owners, Inc.*

May 29, 2020

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ALLEGATIONS OF THE COMPLAINT .............................................................................. 3

    A.   The Complaint and the Exhibits .............................................................................. 3

    B.   The Parties ................................................................................................................ 3

    C.   Past Practice and the Lease Provisions Relating to Holders of Unsold Shares ................. 4

    D.   The Prior State Court Action ................................................................................... 5

    E.   The Sublet Policy ..................................................................................................... 5

    F.   Plaintiff's Claims ...................................................................................................... 6

ARGUMENT ........................................................................................................................... 7

    I.    New York Law Bars Plaintiff's Claims .................................................................. 8

        A.  The Provisions of the Governing Documents on which Plaintiff's Breach of Contract Claims Are Based Are Void under New York Law ............................................... 8

        B.  Since Paragraph 38 of the Proprietary Lease is Void, So Is the Declaratory Judgment. 12

        C.  Mr. Dunnegan's Claims Are Precluded Irrespective of Past Practices. ........................ 13

        D.  Mr. Dunnegan Cannot Save His Subletting Privileges by Extending them to All Shareholders at the Corporation's Expense. ................................................................ 14

    II.   NY BCL § 501(c) and Paragraph 15 of the Lease Require the Corporation to Charge Sublet Fees to all Shareholders Equally ........................................................................ 16

    III   The Plaintiff's Allegations Do Not Support a Claim for Breach of Fiduciary Duty. ........ 17

        A.  Under New York Law, a Co-op Does Not Have a Fiduciary Duty to Its Shareholders Individually .............................................................................................................. 17

        B.  If the Purported Breach of Fiduciary Duty Was the Intentional Breach of Contract and There Was No Breach of Contract, There Can Be No Breach of Fiduciary Duty ............... 18

CONCLUSION ........................................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................................. 6, 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 7

*Bregman v. 111 Tenants Corp.*, 97 A.D.3d 75 (1ˢᵗ Dep't 2012).................................. 8, 10, 12, 14

*DeWeerth v Baldinger*, 38 F.3d 1266, 1272 (2d Cir 1994)........................................................ 8

*Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)......................................................................... 7

*Fe Bland v. Two Trees Management Co.*, 66 N.Y.2d 556, 489 N.E.2d 223 (1985)............. 8, 9, 15

*First Union Baptist Church of the Bronx v. TD Capital Group LLC*,
572 B.R. 79 at 96-97 (S.D.N.Y. 2017)................................................................................. 13

*Fletcher v Dakota, Inc.*, 99 A.D.3d 43 (1ˢᵗ Dep't 2012)........................................................... 17

*Guaranty Trust Co. v. York*, 326 U.S. 99 (1945)....................................................................... 7

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009).............................................................................. 7

*Hyman v New York Stock Exch., Inc.*, 46 AD3d 335 (2007) ..................................................... 18

*In re Wachovia Equity Securities Litig.*, 753 F. Supp. 2d 326 (S.D.N.Y. 2011) ......................... 7

*Krakauer v. Stuyvesant Owners, Inc.*, 301 A.D.2d 450 (1ˢᵗ Dep't 2003).................................. 15

*McCabe v Hoffman*, 138 A.D.2d 287 (1ˢᵗ Dep't 1988).............................................................. 9

*Oppman v IRMC Holdings, Inc.*,
14 Misc. 3d 1219A, 2007 NY Slip Op 50093[U] (Sup. Ct. N.Y. County 2007)...................... 19

*Orens v. Novello*, 99 N.Y.2d 180 , 783 N.E.2d 492 (2002)....................................................... 17

*Pastena v. 61 W. 62 Owners Corp.*, 169 A.D.3d 600 (1ˢᵗ Dep't 2019)................................ passim

*Pastena v. 61 W. 62 Owners Corp.*, M-1721 (1ˢᵗ Dep't July 16, 2019)..................................... 11

*Peacock v. Herald Sq. Loft Corp.*, 67 A.D.3d 442 (1ˢᵗ Dep't 2009)........................................ 18

*Razzano v. Woodstock Owners Corp.*, 111 A.D.3d 522 (1ˢᵗ Dep't 2013).................... 8, 11, 14, 16

*Riverside Syndicate, Inc. v. Munroe*, 10 N.Y.3d 18, 882 N.E.2d 875 (2008)........................... 12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)........................ 8

*Spiegel v. 1065 Park Ave. Corp.*, 305 A.D.2d 204 (1st Dep't 2003)............................ 8, 10, 11, 14

*Starr v. Sony BMG*, 592 F.3d 314 (2d Cir. 2010) .......................................................... 6

*Susser v. 200 East 36th Owners Corp.*, 262 A.D.2d 197 (1st Dep't 1999) ............................. 11, 14

*Wapnick v Seven Park Ave. Corp.*, 240 A.D.2d 245 (1st Dep't 1997) .................................. 16, 17

*Wolff v Chrysler (In re Old Carco LLC)*,
2010 Bankr. LEXIS 6320 (Bankr. S.D.N.Y. July 30, 2010)......................................... 6

**Statutes**

New York Business Corporation Law § 501(c)....................................................passim

New York's General Business Law § 352-eeee....................................................... 11

**Other Authorities**

Publication 542 (01/2019)............................................................................ 18

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................... 1, 7

## PRELIMINARY STATEMENT

This action is an attempt by a shareholder and proprietary lessee in a co-op apartment building to assert rights that have been invalidated under New York law as void. The plaintiff, William Dunnegan, claims that he is a holder of unsold shares in the defendant corporation, 220 East 54th Street Owners, Inc. (the "Corporation"). He claims that because of his "holder" status, he can sublet his co-op apartments without the consent of the Corporation and without paying the sublet fees mandated by the Corporation's duly enacted sublet policy (Dkt. No. 1-3). He claims that to apply the corporation's sublet policy to him is a breach of contract and breach of fiduciary duty.  The rights claimed by Mr. Dunnegan as a "holder" are void as a matter of law.  The Corporation moves to dismiss Mr. Dunnegan's claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This claim, which would give Mr. Dunnegan rights not enjoyed by other shareholders of the Corporation, would make his shares unequal to the other shares of the same class. The privileges claimed by Mr. Dunnegan to sublet without the Corporation's consent and without the payment of fees violate New York Business Corporation Law § 501(c), which requires that "each share shall be equal to every other share of the same class."

Mr. Dunnegan has claimed that because his alleged rights are memorialized in the proprietary lease,[1] the offering plan pursuant to which he claims he purchased his shares, specifically Paragraph 38 thereof (Dkt. No. 1-1), and a Declaratory Judgment and Order of Dismissal by Consent (Dkt. No. 1-2), that a sublet policy treating him identically to other shareholders is a breach of contract. This issue, however, has been thoroughly litigated in the New

---

[1] All of the shareholders of the Corporation have identical proprietary leases.  This proprietary lease is based on a model proprietary lease that has been construed by New York Courts as explained herein.

York state courts, culminating in the governing appellate court's decision in *Pastena v. 61 W. 62 Owners Corp.*, 169 A.D.3d 600 (1st Dep't 2019).  In *Pastena*, the Court held that "paragraph 38 of the proprietary lease, which purportedly exempts holders of unsold shares from certain expenses and fees assessed by the landlord, is void as a matter of law." *Id.* (citations omitted).

Mr. Dunnegan's own complaint acknowledges his awareness of this decision, but asks this Court to ignore its importance. This is something the Court should not do. When viewed in light of the long line of cases striking subletting privileges by applying BCL § 501(c) to the standard proprietary lease in New York, language found both in the lease at issue here and the lease in *Pastena*, there can be little question that the Appellate Division, First Department meant exactly what it said.

Mr. Dunnegan alleges that the Corporation breached its fiduciary duty to him by violating his contractual rights. However, a corporation does not owe a fiduciary duty to its individual shareholders. Moreover, as those contractual rights were void in the first instance, they could not legally exist let alone be violated.

As a result, Mr. Dunnegan has not pled a claim for which relief can be granted. For these and other reasons explained below in more detail, Mr. Dunnegan's claims should be dismissed.

## ALLEGATIONS OF THE COMPLAINT[2]

### A.   The Complaint and the Exhibits

On or about March 19, 2020, Plaintiff filed a complaint (Dkt. No. 1).[3] The Complaint contains three exhibits. Exhibit A is an excerpt of the Offering Plan (Dkt. No. 1-1).[4] Exhibit B is a Declaratory Judgment and Order of Dismissal by Consent, dated October 3, 2005, so ordered on November 14, 2005, and entered on January 3, 2006 (Dkt. No. 1-2).[5] Exhibit C is the Notice of Sublet Policy and Revised House Rules, dated March 5, 2020 (Dkt. No. 1-3).[6]

### B.   The Parties

The defendant, 220 East 54th Street Owners, Inc., is a New York domestic corporation that owns and operates a co-op apartment building. Compl. ¶¶ 1, 8 and the Declaration of Emil A. Samman ("Samman Decl."), to which is annexed a true and correct copy of the Corporation's proprietary lease (the "Lease") with all tenants, including Mr. Dunnegan, as Exhibit 1 (Dkt. No. 15-1) at 9.[7] The Corporation's building is known as and located at 220 East 54th Street, New York, New York (the "Building"). Plan at 2 and the Lease at 9.[8]

---

[2] The Defendant disputes many of the allegations in the Complaint but accepts the plaintiff's allegations as true solely for the purposes of this motion.

[3] The plaintiff's complaint, dated March 19, 2020, will be referred to herein as "the Complaint" and cited as "Compl. ¶ __."

[4] The offering plan, excerpted by Mr. Dunnegan in the Complaint, will be referred to herein as "the Plan" and cited as "Plan at __."

[5] The Declaratory Judgment and Order of Dismissal by Consent, dated October 3, 2005, so-ordered on November 14, 2005, and entered on January 3, 2006 will be referred to herein as the "Declaratory Judgment" and cited as "Decl. Judg. at __ [page number]."

[6] The Sublet Policy and Revised House Rules will be referred to herein as the "Sublet Policy" and cited as "Sublet Policy at __ [page number]."

[7] The Corporation's proprietary lease (Dkt. No. 15-1) will be referred to herein as "the Lease" and cited as "Lease at __ [page number]" or "Lease at ¶___."

[8] For this motion, movant has adopted the convention of referring to the page of the image as it appears on the top of the page on the Court's Electronic Case Filing System.

The plaintiff, William Dunnegan ("Mr. Dunnegan"), is a shareholder and proprietary lessee of the Corporation. Compl. ¶¶ 1, 12, 20. Mr. Dunnegan owns shares and appurtenant tenancies for Apartment 6L (Compl. ¶ 12) and Apartment 12A (Compl. ¶ 20). Mr. Dunnegan has alleged that he is a holder of unsold shares. Compl. ¶¶ 12, 20.

### C.    Past Practice and the Lease Provisions Relating to Holders of Unsold Shares

Since 1989, Mr. Dunnegan has sublet Apartment 6L in a series of market-rate subleases. Compl. ¶¶ 13, 14. Since 2012, Mr. Dunnegan has sublet Apartment 12A in a series of market-rate subleases. Compl. ¶¶ 22, 23. Mr. Dunnegan has sublet Apartment 6L and Apartment 12A with the knowledge of the Corporation, but without its consent or the payment of sublet fees to the Corporation pursuant to the Corporation's policies generally applicable to subletting in the Building. Compl. ¶¶ 14, 23.

Mr. Dunnegan has sublet in contravention of the Corporation's sublet policy, because, he contends, "consent was not required under either the Governing documents or the 2006 Declaratory Judgement." Compl. ¶¶ 14, 23. The section of the governing documents to which Mr. Dunnegan refers and relies upon is Paragraph 38 of the Lease between the Corporation and Mr. Dunnegan. Paragraph 38(b) of the Lease provides in relevant part:

> Neither the subletting of the Apartment nor the assignment of this Lease by the Lessee who is the holder of the block of Unsold Shares allocated thereto, shall require the consents of the Directors or shareholders, as provided in Paragraphs 15 and 16.

Plan at 3 and Lease at 34. Paragraph 38(e) of the Lease further provides:

> Anything contained in this Lease and the House Rules annexed hereto to the contrary notwithstanding, Lessor shall not prevent nor unreasonably impede or interfere with the sale of any block of Unsold Shares or the subletting of an apartment to which a block of Unsold Shares is allocated… No discriminatory charge or fee may be imposed on any lessee who is a holder of Unsold Shares.

4

Plan at 4 and Lease at 35.

**D.** **The Prior State Court Action**

In 2005, Mr. Dunnegan litigated with the Corporation concerning his purchase of the co-op unit known as Apartment 12A in the Building. Compl. ¶¶ 18-24. In resolution of that action the parties entered into the Declaratory Judgment. Compl. ¶ 19 and Decl. Judg. at 2. The Declaratory Judgment provided in relevant part:

> ORDERED, ADJUDGED and DECREED that the shares of Freed in 220 East 54th allocated to apartment 2H and the shares of Dunnegan in 220 East 54th allocated to apartments 12A and 6L, on the date hereof (i) are Unsold Shares within the meaning of paragraph 38 of the proprietary lease of Freedman and Dunnegan, and (ii) may be assigned or sublet without any consent of 220 East 54th, including its Board of Directors, Shareholders and Managing Agent and without payment of any discriminatory fee by Freedman or Dunnegan to 220 East 54th….

Decl. Judg. at 2. Mr. Dunnegan has claimed that the Declaratory Judgment action constitutes an additional contract and the Sublet Policy breaches this contract. Compl. ¶¶ 38-39.

**E.** **The Sublet Policy**

On March 2, 2020, the Corporation made a resolution clarifying that the sublet policy applies to all shareholders equally, including holders of unsold shares like Mr. Dunnegan. Sublet Policy at 3-5. Mr. Dunnegan received notice of this resolution on March 5, 2020. Compl. ¶ 25. The Sublet Policy was memorialized in the Corporation's House Rules. Sublet Policy at 6-18, esp. 9-11. The policy was adopted in light of changes to governing law in the jurisdiction, to wit the First Judicial Department of the State of New York. Compl. ¶ 25 and Sublet Policy at 2.

Mr. Dunnegan inquired as to the law, and the Corporation provided the controlling case, *Pastena v. 61 W. 62 Owners Corp.*, 169 A.D.3d 600 (1st Dep't 2019). Compl. ¶¶ 26-27. Mr.

Dunnegan has alleged that the language voiding his rights as a holder of unsold shares "was either an alternative holding or *dicta*." Compl. ¶ 27.[9]

### F.   <u>Plaintiff's Claims</u>

Mr. Dunnegan makes three claims. Compl. ¶¶ 29-44. First, he claims that the enactment of the Sublet Policy by the Corporation, which stripped holders of their special privileges, was a breach of the Plan and the Lease. Compl. ¶¶ 29-34. Mr. Dunnegan claims alternatively that if his special privileges were void, then the appropriate adjudication of rights was to give all shareholders the same privileges, *i.e.*, enlarge all tenant's rights at the expense of the Corporation. Compl. ¶ 31. Second, Mr. Dunnegan claims that the resolution making it clear that the Sublet Policy applies to Mr. Dunnegan was a breach of the Declaratory Judgment. Compl. ¶¶ 35-40. Third, Mr. Dunnegan claims that the Corporation owed him a fiduciary duty as an individual shareholder.  Compl. ¶ 42.  He further alleges that the alleged intentional breach of the Plan, the Lease, and the Declaratory Judgment was a breach of that fiduciary duty. Compl. ¶43.[10]

For Mr. Dunnegan to prevail, the Court would have to disregard the applicable statute, BCL § 501(c), and case law, such as *Pastena*, that mandate the equal treatment of shareholders owning the same class of shares.

---

[9] This characterization of the decision is a legal conclusion and is entitled no deference as an allegation in the Court's analysis of the sufficiency of the Complaint. See *Wolff v Chrysler (In re Old Carco LLC)*, 2010 Bankr. LEXIS 6320, at 2-3 (Bankr. S.D.N.Y. July 30, 2010) ("Legal conclusions set forth in the Complaint have been excluded to the extent they are not intertwined with relevant facts, as they should not be presumed to be true or correct and do not bolster the factual sufficiency of a complaint on a motion to dismiss. *See Starr v. Sony BMG*, 592 F.3d 314, 317n.1 (2d Cir. 2010) (noting that a court "'considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumptions of truth.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868(2009)).")

[10] Plaintiff, throughout the Complaint, makes legal assertions in the guise of factual allegations. As noted in footnote 9, *supra*, these assertions are not entitled to deference or weight.

## ARGUMENT

A complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) where, as here, it fails to state a legal claim or does not contain sufficient well-pled facts to support "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). While "a court must accept as true all the allegations contained in the Complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

As the Court elaborated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" and is "not bound to accept as true a legal conclusion couched as factual allegations." *Id.* at 678-79. The Court further observed that "[t]o survive a motion to dismiss," the facts pleaded by the plaintiff accepted as true, must be sufficient to state a claim for relief that is "plausible." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). "If the plaintiff 'ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed.'" *In re Wachovia Equity Securities Litig.*, 753 F. Supp. 2d 326, 347 (S.D.N.Y. 2011) (quoting *Twombly*, 550 U.S. at 570).

New York law applies to this case. Specifically, this Court should adhere to N.Y. Business Corporation Law § 501(c) as interpreted by the Appellate Division, First Department. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945). Under the *Erie* doctrine, federal courts sitting in diversity are bound to follow state law

on any matter of substantive law not "governed by the Federal Constitution or by Acts of Congress." *DeWeerth v Baldinger*, 38 F.3d 1266, 1272 (2d Cir 1994) (quoting *Erie*, 304 U.S. at 78); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406-07 (2010).

Mr. Dunnegan has failed to sufficiently state a claim for breach of contract because the contractual provision on which he relies is void under New York law. Additionally, the breach of fiduciary duty claim is a restatement of his breach of contract claims and is premised on a fiduciary relationship that does not exist. Therefore, the Complaint must be dismissed as a matter of law.

## I.   New York Law Bars Plaintiff's Claims.

### A.   The Provisions of the Governing Documents on which Plaintiff's Breach of Contract Claims Are Based Are Void under New York Law.

New York courts have repeatedly invalidated co-op governing documents as violating the New York Business Corporation Law ("BCL"), specifically Section 501(c) thereof. See *Fe Bland v. Two Trees Management Co.*, 66 N.Y.2d 556, 489 N.E.2d 223 (1985), *Spiegel v. 1065 Park Ave. Corp.*, 305 A.D.2d 204 (1st Dep't 2003); *Bregman v. 111 Tenants Corp.*, 97 A.D.3d 75 (1st Dep't 2012); *Razzano v. Woodstock Owners Corp.*, 111 A.D.3d 522 (1st Dep't 2013).

Mr. Dunnegan has asserted two claims sounding in breach of contract. Compl. ¶¶ 29-40. The first contractual provision on which Plaintiff relies is Paragraph 38 of the Lease as set forth in the offering plan. Compl. ¶¶ 29-34 and the Plan at 3-4. The second contract on which Mr. Dunnegan relies is the Declaratory Judgment. Compl. ¶¶ 35-40 and Decl. Judg. at 2-3. Both claims reduce to the argument that Mr. Dunnegan believes that he is entitled to special rights and

privileges as a holder of unsold shares that other shareholders of shares of the same class do not possess. The courts of New York have disagreed with Mr. Dunnegan.

New York courts have construed BCL§ 501(c) to require holders of unsold shares, like Mr. Dunnegan, to be treated the same as other shareholders with respect to subleases.

BCL § 501(c) provides:

> Subject to the designations, relative rights, preferences and limitations applicable to separate series and except as otherwise permitted by subparagraph two of paragraph (a) of section five hundred five of this article, ***each share shall be equal to every other share of the same class***. With respect to corporations owning or leasing residential premises and operating the same on a cooperative basis, however, provided that (1) liquidation or other distribution rights are substantially equal per share, (2) changes in maintenance charges and general assessments pursuant to a proprietary lease have been and are hereafter fixed and determined on an equal per-share basis or on an equal per-room basis or as an equal percentage of the maintenance charges, and (3) voting rights are substantially equal per share or the certificate of incorporation provides that the shareholders holding the shares allocated to each apartment or dwelling unit owned by the corporation shall be entitled to one vote in the aggregate regardless of the number of shares allocated to the apartment or dwelling unit or the number of shareholders holding such shares, shares of the same class shall not be considered unequal because of variations in fees or charges payable to the corporation upon sale or transfer of shares and appurtenant proprietary leases that are provided for in proprietary leases, occupancy agreements or offering plans or properly approved amendments to the foregoing instruments.

(Emphasis added.)[11]

---

[11] BCL § 501(c) was amended specifically with respect to rights in co-ops, especially concerning "flip taxes" charged upon a sale of co-op shares, in response to *Fe Bland v. Two Trees Management Co.*, 66 N.Y.2d 556, 489 N.E.2d 223 (1985), and so the full statute, including the language specifically related to co-ops, is set forth for the Court's reference and convenience. However, no exception was created for holders of unsold shares and subletting rights. *See McCabe v Hoffman*, 138 A.D.2d 287, 288-89 (1st Dep't 1988) ("The effect of the amended BCL § 501 (c) was to overrule *Fe Bland* insofar as it related to a transfer of shares. However, the new amendment does

The special privileges enjoyed by holders of unsold shares, by virtue of their asserted rights to sublet unfettered by review or assessment by their co-ops, have long been acknowledged as an inequality in violation of BCL § 501(c).

In *Spiegel v. 1065 Park Ave. Corp.*, 305 A.D.2d 204 (2003), the Appellate Division of the First Department vacated a declaratory judgment of the lower court and held "that paragraph 38 of the proprietary lease and the second paragraph of article V, section 4 of the cooperative's bylaws violate Business Corporation Law § 501(c)." *Id.* at 204.  The Appellate Division further held that "plaintiff is not entitled to special subletting privileges by reason of such provisions, and that plaintiff cannot sublet the subject apartment without the consent of the cooperative's Board of Directors or shareholders." *Id.*  As the *Spiegel* court further stated:

> There is no question that lease paragraph 38 and the related bylaw provision violate Business Corporation Law § 501(c) by giving original purchasers more favorable subletting rights than nonoriginal purchasers (see *Wapnick v Seven Park Ave. Corp.*, 240 A.D.2d 245, 246-247, 658 N.Y.S.2d 604 [1997]).  The only question is whether the cooperative waived or should be estopped from asserting the illegality of such preferential treatment.  We hold not.

*Id.* at 205.

The First Department has consistently rejected special privileges enjoyed by certain categories of shareholders owning common shares, including those enjoyed by original purchasers and holders of unsold shares, as violations of BCL § 501(c) and void under New York law. *See Bregman v. 111 Tenants Corp.*, 97 A.D.3d 75 (1st Dep't 2012) (invalidating special subletting

---

not apply to a sublease, which is neither a transfer of shares nor a transfer of an entire interest in a leasehold.").

rights of a shareholder obtained through contract with a co-op); and *Razzano v. Woodstock Owners Corp.*, 111 A.D.3d 522 (1st Dep't 2013) (invalidating subletting rights based on date of purchase).[12]

This line of cases culminated in the Court's ruling in *Pastena v. 61 W. 62 Owners Corp.*, 169 A.D.3d 600 (1st Dep't 2019), in which the Court explicitly invalidated these rights for holders of unsold shares like Mr. Dunnegan, stating:

> However, even if factual issues were presented by plaintiff's contract of sale, paragraph 38 of the proprietary lease, which purportedly exempts holders of unsold shares from certain expenses and fees assessed by the landlord, is void as a matter of law (see *Spiegel v 1065 Park Ave. Corp.*, 305 AD2d 204, 759 NYS2d 461 [1st Dept 2003]).

*Id.* at 600. Paragraph 38 of the proprietary lease in *Pastena* is in all material respects identical to Paragraph 38 of the proprietary lease in this action. *See* Samman Decl., to which is annexed a true and correct copy of the proprietary lease litigated in *Pastena* as Exhibit 2 (Dkt. No. 15-2) at 32-33. The parties in *Pastena* sought reargument and leave to appeal to the Court of Appeals. The parties' submissions specifically addressed Paragraph 38 of the lease, but the Court denied the motion. *See Pastena v. 61 W. 62 Owners Corp.*, M-1721 (1st Dep't July 16, 2019) a true and correct copy of which is annexed to the Samman Decl. as Exhibit 3 (Dkt. No. 15-3).

The Building is in Manhattan, *i.e.*, the County, City, and State of New York. Compl. ¶ 5, Plan at 2, Lease at 9. The Building is within the First Judicial Department. *Pastena* is governing law for both Mr. Dunnegan and the Corporation. Consequently, *Pastena* is dispositive in this case,

---

[12] The lone exception to this line of cases has been *Susser v. 200 East 36th Owners Corp.*, 262 A.D.2d 197 (1st Dep't 1999), in which the Court allowed *sponsors* of co-ops to enjoy the special privileges, because they were "justified by obligations imposed upon the sponsor that are not shared by other shareholders." *Id.* at 198. The Court found that co-ops were estopped from asserting the illegality of the sponsors' rights, because to do so would create obligations for sponsors that would be "difficult if not impossible" to meet in light of their duties under New York's General Business Law § 352-eeee. *Id.* These obligations are not pled or otherwise present here.

as it invalidates the provisions of the Corporation's governing documents on which Mr. Dunnegan bases his claims for breach of contract.

B.     **Since Paragraph 38 of the Proprietary Lease is Void, So Is the Declaratory Judgment.**

The distinction in the Complaint between the governing documents of the Corporation and the Declaratory Judgment is a distinction without a difference. The Declaratory Judgement on its face simply declares the rights previously enumerated in Paragraph 38 of the Lease and applies them to Mr. Dunnegan's shares and tenancies. Decl. Judg. at 2-3. Therefore, as New York law has invalidated the special privileges of various types of shareholders, including those of holders of unsold shares under Paragraph 38 of the Lease, as violating BCL § 501(c), it has invalidated those rights under the contract of the Declaratory Judgment as well. *See Riverside Syndicate, Inc. v. Munroe*, 10 N.Y.3d 18, 882 N.E.2d 875 (2008) (affirming the Appellate Division, First Department decision to void a consent judgment as void against public policy, as enumerated in the Rent Stabilization Code, and declaring that there was no contractual obligation in the first instance notwithstanding the Order).

In *Bregman v. 111 Tenants Corp.*, 97 A.D.3d 75 (1st Dep't 2012), the Court held:

> Plaintiff's attempt to distinguish *Spiegel* based on "the sponsor's offer of special subletting privileges" is unavailing. The two cases merely involve two different situations in which shareholders of common shares could claim to have rights beyond those of other holders of common shares, whether based on bylaws, proprietary lease provisions, or agreements "assumed by" the cooperative corporation. We view the directive of Business Corporation Law § 501 (c) as not limited to unequal treatment in proprietary leases or bylaws. ***It precludes the proposition, advanced by plaintiff, that a shareholder purchasing common shares may, by contract with the cooperative, obtain special rights that could not be granted in the corporate documents themselves.***

12

*Id.* at 83 (emphasis added). The Declaratory Judgment would be such a contract, and it cannot violate the Business Corporation Law any more than the Lease can. The ordering of the Declaratory Judgment does not bless the contract. *See First Union Baptist Church of the Bronx v. TD Capital Group LLC*, 572 B.R. 79 at 96-97 (S.D.N.Y. 2017).[13]

Even if the Court gives weight to the Declaratory Judgment, it would not disturb the right and duty of the Corporation to impose a sublet fee on holders of unsold shares, unless the fee was discriminatory. Mr. Dunnegan has not alleged that the fee is discriminatory, because he cannot. By its terms, the fee is charged to every subletting shareholder and proprietary lessee.

## C.     Mr. Dunnegan's Claims Are Precluded Irrespective of Past Practices.

The *Spiegel* Court determined that a shareholder's reliance on perceived special privileges in the purchase of his shares does not grant him waiver or estoppel with respect to those illegal rights. As the Court stated:

> *Nor can waiver or estoppel based on the cooperative's conduct be relied upon to enforce corporate documents that are contrary to public policy* (see *Millington v Rapoport*, 98 A.D.2d 765, 766, 469 N.Y.S.2d 787 [1983]). *Thus it does not avail plaintiff that she relied on the sponsor's offer of special subletting privileges in buying the apartment*, that the cooperative learned of her intent to sublet the

---

[13] In *First Union Baptist Church of the Bronx v. TD Capital Group LLC*, 572 B.R. 79 (S.D.N.Y. 2017), the Court invalidated a so-ordered stipulation and enumerated multiple reasons for doing so, rejecting the argument that there might be *res judicata* in such instances. The Court stated, "TD Capital has implied that the Court approval of the Stipulation should be treated as a prior determination by the Court that the deed-recording provisions are valid and are in compliance with New York law. But the only issue presented to the Court, when the parties sought approval of the Stipulation, was whether First Union could enter into it. The motion papers, and the record of the proceedings, do not include any request for a ruling as to the enforceability of any of the terms of the Stipulation. There was no mention of the principles of New York law that are set forth above, and certainly there was no request that the Court approve and give force to an arrangement that would be contrary to what New York law otherwise would have provided. TD Capital did not seek a ruling on the issue; instead, it took its chances as to whether the terms were enforceable. In fact, if TD Capital had informed the Court that the Court's approval of the Stipulation was intended to bless an outcome that would be inconsistent with New York law, the Court undoubtedly would have refused to approve that result." *Id.* at 96-97.

> apartment when she purchased a second larger apartment in the building with her husband, that the cooperative is continuing to permit subletting by other original shareholders and that the cooperative is itself subletting an apartment. In this regard we also note the "no waiver" clause in the proprietary lease (see *Katz v 215 W. 91st St. Corp.*, 215 A.D.2d 265, 267, 626 N.Y.S.2d 796 [1995]).

*Spiegel v 1065 Park Ave. Corp.,* 305 A.D.2d at 205 (emphasis added).

Subsequent to *Spiegel*, the First Department ruled on this issue twice more. In *Bregman v. 111 Tenants Corp.*, 97 A.D.3d 75 (1st Dep't 2012), which bears factual similarities to this case, a shareholder "challenge[d] the enactment and enforcement of a resolution adopted by the board of directors of defendant, a residential cooperative corporation. The resolution prohibits the subleasing, without board approval, of a shareholder's apartment for more than two years in any four-year period, and institutes sublet fees." *Id.* at 76-77. The Court reasoned:

> Moreover, even if plaintiff had been granted such preferential unfettered sublet rights, Business Corporations Law § 501 (c), which provides that "each share [issued by a corporation] shall be equal to every other share of the same class," precludes any such special subletting rights (see *Wapnick v Seven Park Ave. Corp.*, 240 AD2d 245, 658 NYS2d 604 [1997]; see also *Krakauer v Stuyvesant Owners*, 301 AD2d 450, 753 NYS2d 367 [2003]).

*Id.* at 82. *See also Razzano v. Woodstock Owners Corp.*, 111 A.D.3d 522 (1st Dep't 2013) (reversing the trial court's denial of summary judgment and holding that a sublet policy that gives different rights to different shareholders based on date of purchase violates BCL § 501(c)).

### D.  Mr. Dunnegan Cannot Save His Subletting Privileges by Extending them to All Shareholders at the Corporation's Expense.

Mr. Dunnegan alleges that all shareholders should be exempt from paying sublet fees. Compl. ¶ 31. This argument has been rejected by the New York courts. In *Susser v. 200 East 36th Owners Corp.*, 262 A.D.2d 197 (1st Dep't 1999), the court held that the invalidation of special

rights under BCL § 501(c) would not mean that co-ops such as the Corporation would be hamstrung by extending the benefits of sponsors to all shareholders. The Court stated:

> It is not consistent with the Legislature's evident intent in amending Business Corporation Law § 501 (c) (L 1986, ch 598, § 1) in response to *Fe Bland v Two Trees Mgt. Co.* (66 NY2d 556) to employ that section as plaintiff would, to turn exemptions such as these, necessitated by law and legislatively sanctioned public policy, into devices for stripping residential cooperative corporations of their essential managerial prerogatives (see, *Mogulescu v 255 W. 98th St. Owners Corp.*, 135 AD2d 32, 38-39, lv dismissed in part and denied in part 73 NY2d 868; see also, *Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530, 536-537; *Weisner v 791 Park Ave. Corp.*, 6 NY2d 426).

*Id.* at 198. The court has reiterated its position that the Corporation retains its right to govern subletting. In *Krakauer v. Stuyvesant Owners, Inc.*, 301 A.D.2d 450 (1st Dep't 2003), the court held that:

> the inclusion of the preferential subleasing provision in the proprietary lease, although violative of Business Corporation Law § 501 (c) (see *Lescht v Concord Vil. Owners Corp.*, 261 A.D.2d 449, 687 N.Y.S.2d 303; *Wapnick v Seven Park Ave. Corp.*, 240 A.D.2d 245, 658 N.Y.S.2d 604), did not effectively divest defendant residential cooperative corporation of its basic, underlying prerogative, unambiguously set forth elsewhere in the proprietary lease, to regulate subtenancies (see *Susser v 200 E. 36th Owners Corp.*, 262 A.D.2d 197, 692 N.Y.S.2d 334). Accordingly, the motion court properly invalidated only the provision according preferential rights, leaving the corporation's authority with respect to the regulation of subtenancies otherwise intact.

*Id.* at 451. In sum, the Corporation is within in rights to review sublets and charge fees to shareholders who sublet their co-op apartments in the Building.

II.   **NY BCL § 501(c) and Paragraph 15 of the Lease Require the Corporation to Charge Sublet Fees to all Shareholders Equally**

Since Paragraph 38 of the Lease and the Declaratory Judgment are void, the Sublet Policy applies to holders of unsold shares and other shareholders equally. Paragraph 15 of the Lease provides, in relevant part, the following:

> the Lessee shall not sublet the whole or any part of the Apartment or renew or extend any previously authorized sublease, unless consent thereto shall have been duly authorized by a resolution of the Directors, or given in writing by a majority of the Directors or, if the directors shall have failed or refused to give such consent, the by Lessees owning at lease sixty-five (65%) percent of the then issued shares of the Lessor.

Lease at 16-17. This is the provision governing Mr. Dunnegan's subletting, since Paragraph 38 is void as a matter of law.

In *Wapnick v Seven Park Ave. Corp.*, 240 A.D.2d 245 (1st Dep't 1997), the court considered a claim by a shareholder (who was not receiving special treatment) that special treatment provided to other shareholders violated BCL § 501(c). The Court held that such special treatment was void as against BCL § 501(c). *Id.*; *see also Razzano v. Woodstock Owners Corp.*, 111 A.D.3d 522 (1st Dep't 2013) (invaliding a sublet policy challenged by a shareholder as being in violation of BCL 501[c]).

As the *Wapnick* court explained, it was not the Legislature's intent to provide for wide-ranging exceptions to BCL § 501(c). The court stated:

> In the wake of the *Fe Bland* decision, and to clarify the right of cooperative corporations to impose a flip tax, the statute was amended in 1986 (see, *Mogulescu v 255 W. 98th St. Owners Corp.*, 135 AD2d 32, lv dismissed 73 NY2d 868). The amendment provided a single exception to the blanket prohibition on unequal treatment in the following manner: "shares of the same class shall not be considered unequal because of variations in fees or charges payable to the corporation upon sale or transfer of shares and

16

appurtenant proprietary leases that are provided for in proprietary leases, occupancy agreements or offering plans or properly approved amendments to the foregoing instruments." (Business Corporation Law § 501 [c], as amended by L 1986, ch 598, § 1.) Thus, while the amendment carved out a specific exception with respect to a flip tax on the sale of shares, if appropriately provided for, it in no way changed the statute's general mandate that shares of the same class be treated equally.   Defendant's contention that variations in fees for subletting and assignment (as opposed to sale of shares) are permissible under the statute so long as appropriately provided for in the instruments listed above is therefore incorrect. Similarly, the IAS Court was in error in finding that Business Corporation Law § 501 (c) applied only to sale of shares and was therefore inapplicable to plaintiff's claims regarding subletting and assignment of shares.

*Wapnick*, 240 A.D.2d at 246-47.

If the Legislature had intended to make exceptions for shareholders like Mr. Dunnegan, it knew how to do so. Its declining to do so is itself an expression of its intent. *See Orens v. Novello*, 99 N.Y.2d 180, 186-187, 783 N.E.2d 492 (2002).

Therefore, as required by BCL § 501(c), the Corporation's Sublet Policy treats all shareholders equally.  Compl. ¶¶ 2, 25-27; *see generally* Sublet Policy at 3-5, 9-11.

**III    The Plaintiff's Allegations Do Not Support a Claim for Breach of Fiduciary Duty.**

      **A.    Under New York Law, a Co-op Does Not Have a Fiduciary Duty to Its Shareholders Individually.**

Mr. Dunnegan has alleged that the Corporation "owes a fiduciary duty to Dunnegan as a result of his status as a shareholder of a closely held corporation." Compl. ¶ 42. However, this is not the law in New York. As the Court stated in *Fletcher v Dakota, Inc.*, 99 A.D.3d 43 (1st Dep't 2012), "Because the Dakota is a corporation, it owes no fiduciary duty to its shareholders (*Peacock v Herald Sq. Loft Corp.*, 67 AD3d 442, 443, 889 NYS2d 22 [2009])." *Id.* at 54 (dismissing the breach of fiduciary of duty claims against the Corporation, a co-op, *sua sponte* "because the

defectiveness of these claims is 'apparent on the face of the record' (*see American Bldg. Contrs. Assoc., Inc. v Mica & Wood Creations, LLC.*, 23 AD3d 322, 323, 804 NYS2d 109 [2005] [internal quotation marks omitted]). Moreover, the dismissal is with prejudice."); *see also Peacock v. Herald Sq. Loft Corp.*, 67 A.D.3d 442, 443 (1ˢᵗ Dep't 2009) ("As to the co-op corporation, defendants correctly point out that 'a corporation does not owe fiduciary duties to its members or shareholders' (*Hyman v New York Stock Exch., Inc.*, 46 AD3d 335, 337, 848 NYS2d 51 [2007]). Accordingly, the second and third causes of action, sounding in breach of fiduciary duty, must be dismissed."). There is no exception to this rule for closely held corporations, and even if there were the characterization of the Corporation as a closely held corporation is unsupported by factual allegations in the Complaint and inaccurate as a matter of law.[14] Moreover, to the extent that the board, as distinct from the Corporation itself, owes a fiduciary duty, that duty runs to the corporation, *i.e.* the shareholders collectively, not Mr. Dunnegan individually. *See Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530, 538 (1990) ("the board owes its duty of loyalty to the cooperative -- that is, it must act for the benefit of the residents collectively.").

The Corporation does not have a fiduciary duty to Mr. Dunnegan under New York law, and so the claims against the Corporation sounding in breach of fiduciary duty should be dismissed.

> **B.** **If the Purported Breach of Fiduciary Duty Was the Intentional Breach of Contract and There Was No Breach of Contract, There Can Be No Breach of Fiduciary Duty.**

Mr. Dunnegan alleges that the Corporation breached its fiduciary duty to him by "the intentional violations of Dunnegan's rights under the governing documents and the 2006

---

[14] The Internal Revenue Service defines a closely held corporation as one in which fifty percent or more of the corporation is owned by five or fewer owners. *See* Publication 542 (01/2019). This is not alleged by Mr. Dunnegan in the Complaint, as it is not the case.

Declaratory Judgment." Compl. ¶ 43. As explained above, since Mr. Dunnegan's rights were not violated, the Sublet Policy cannot serve as a breach of fiduciary duty.

Moreover, if "the same facts that underlie a plaintiff's implied contract claim also form the basis of that plaintiff's fiduciary duty claim and if the duty sought to be enforced arises out of the parties' contractual as opposed to their fiduciary relationship, then the fiduciary duty claim should be dismissed." *Oppman v IRMC Holdings, Inc.*, 14 Misc. 3d 1219[A], 1219A, 2007 NY Slip Op 50093[U], at *8 (Sup. Ct. N.Y. County 2007).

## CONCLUSION

Mr. Dunnegan's claims for breach of contract cannot be sustained under New York law. The provisions of the Corporation's governing documents and the Declaratory Judgment on which his claims rely have been declared void as a matter of law for violating Business Corporation Law § 501(c). Mr. Dunnegan cannot recast his claims for breach of contract as a breach of fiduciary duty claim because New York law does not establish such a duty running from corporations to their shareholders and because Mr. Dunnegan's allegations, which sound in breach of contract, are without merit under BCL § 501(c) and the cases interpreting it.

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: May 29, 2020

Andrew D. Stern
Moshe Bobker
TANE WATERMAN & WURTZEL, P.C.
120 Broadway, Suite 948
New York, New York 10271
Tel: (212) 766-4000
Fax: (212) 766-4022
astern@tww.nyc
mbobker@tww.nyc

19

/s/ Emil A. Samman

Emil A. Samman
Jason Goodman
ROMER DEBBAS LLP
275 Madison Avenue, Suite 801
New York, New York 10016
Tel: (212) 888-3100
Fax: (212) 888.3201
esamman@romerdebbas.com
jgoodman@romerdebbas.com

*Counsel for*
*220 East 54TH Street Owners, Inc.*