UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

WILLIAM DUNNEGAN,                                    :

                        Plaintiff,   :

              -against-                        :                    20 Civ. 2418 (GBD)

220 EAST 54th STREET OWNERS, INC.,        :

                   Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS


DUNNEGAN & SCILEPPI LLC
Attorneys for the Plaintiff
350 Fifth Avenue, 76th Floor
New York, New York 10118
(212) 332-8300

**<u>Table of Contents</u>**

Table of Authorities ...................................................................................................... ii

Preliminary Statement ...................................................................................................1

Statement of Facts .........................................................................................................3

Argument .......................................................................................................................3

      I.      BECAUSE THE RIGHTS THAT THE GOVERNING DOCUMENTS
            GRANT TO HOLDERS OF UNSOLD SHARES ARE NOT CONTRARY
            TO PUBLIC POLICY, DUNNEGAN HAS PROPERLY STATED A
            FIRST CLAIM FOR RELIEF ...............................................................................3

            A.     Governing Documents That Grant Rights To Holders Of Unsold
                    Shares Are Fully Consistent With Public Policy .......................................4

                   1.     Governing Documents May Lawfully Grant Holders Of
                            Unsold Shares Additional Rights....................................................4

                   2.     The Argument Of 220 Owners That The Law Changed In
                            2019 Borders On Frivolous.............................................................8

            B.     The Remedy For Any Illegality Is To Give All Shareholders The
                    Rights Of Holders Of Unsold Shares.......................................................12

      II.     BECAUSE THE 2006 DECLARATORY JUDGMENT ESTOPS 220
            OWNERS FROM ARGUING THAT THE GOVERNING DOCUMENTS
            ARE UNENFORCEABLE, THE COURT SHOULD NOT DISMISS
            DUNNEGAN'S SECOND CLAIM FOR RELIEF...............................................15

      III.    BECAUSE A CLOSE CORPORATION CAN OWE A FIDUCIARY
            DUTY TO ITS SHAREHOLDERS, THE COURT SHOULD NOT
            DISMISS DUNNEGAN'S THIRD CLAIM FOR RELIEF................................17

Conclusion ...................................................................................................................18

**Table of Authorities**

**Cases**

*19th St. Assocs. v. State*,
79 N.Y.2d 434, 593 N.E.2d 265 (N.Y. 1992) ............................................................... 15

*Amalgamated Sugar Co. v. NL Indus., Inc.*,
825 F.2d 634 (2d Cir. 1987)........................................................................................ 16

*Bregman v. 111 Tenants Corp.*,
97 A.D.3d 75, 943 N.Y.S.2d 100 (1st Dep't 2012) ............................................... 10-11

*Davlee Const. Corp. v. Brooks*,
21 Misc.2d 137, 188 N.Y.S.2d 847 (Sup. Ct. Nassau Cty. 1959) ........................... 15-16

*Fe Bland v. Two Trees Mgt. Co.*,
66 N.Y.2d 556, 498 N.Y.S.2d 336, 489 N.E.2d 223 (N.Y. 1985) ........................... 6, 10

*Krakauer v. Stuyvesant Owners, Inc.*,
301 A.D.2d 450, 753 N.Y.S.2d 367 (1st Dep't 2003) ................................................ 14

*Kralik v. 239 E. 79th St. Owners Corp.*,
5 N.Y.3d 54, 832 N.E.2d 707 (N.Y. 2005) ............................................................... 6, 8

*McCabe v. Hoffman*,
138 A.D.2d 287, 526 N.Y.S.2d 93 (1st Dep't 1988) ................................................. 11

*Meyer v. Holley*,
537 U.S. 280, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003)............................................. 18

*Mogulescu v. 255 W. 98th St. Owners Corp.*,
135 A.D.2d 32, 523 N.Y.S.2d 801 (1st Dep't 1988) ................................................... 4

*Nainan v. 715-723 Sixth Ave. Owners Corp.*,
177 A.D.3d 489, 113 N.Y.S.3d 50 (1st Dep't 2019) ................................................. 17

*Pastena v. 61 W. 62 Owners Corp.*,
169 A.D.3d 600, 95 N.Y.S.3d 44 (1st Dep't 2019) ........................................ 8-9, 9, 10

*Razzano v. Woodstock Owners Corp.*,
111 A.D.3d 522, 975 N.Y.S.2d 38 (1st Dep't 2013) ................................................. 10

*Rego Park Gardens Assocs. v. Rego Park Gardens Owners, Inc.*,
174 A.D.2d 337, 570 N.Y.S.2d 550 (1st Dep't 1991) ........................................... 4-5, 7

*Riverside Syndicate, Inc. v. Munroe*,
10 N.Y.3d 18, 882 N.E.2d 875 (N.Y. 2008) ............................................................... 16

*Rotblut v 150 E. 77th St. Corp.*,
79 A.D.3d 532, 914 N.Y.S.2d 22 (1st Dep't 2010) ...................................................... 9

*Sassi-Lehner v Charlton Tenants Corp.*,
55 A.D.3d 74, 863 N.Y.S.2d 20 (1st Dep't 2008) ........................................................ 8

*Shostack v. Diller*,
2015 WL 5535808 (S.D.N.Y. Sept. 16, 2015),
*report and recommendation adopted*,
2016 WL 958687 (S.D.N.Y. Mar. 8, 2016) .......................................................... 17-18

*Spiegel v 1065 Park Ave. Corp.*,
305 A.D.2d 204, 759 N.Y.S.2d 461 (1st Dep't 2003). ......................................... 8, 10

*Susser v. 200 E. 36th Owners Corp.*,
262 A.D.2d 197, 692 N.Y.S.2d 334 (1st Dep't 1999) .............................. 5, 7-8, 13-14

*Tiemann Place Realty, LLC v. 55 Tiemann Owners Corp.*,
141 A.D.3d 56, 33 N.Y.S.3d 174 (1st Dep't 2016) .................................................. 5, 7

*Yatter v. Cont'l Owners Corp.*,
22 A.D.3d 573, 802 N.Y.S.2d 239 (2d Dep't 2005) ................................................... 5

*Zuckerman v. 33072 Owners Corp.*,
97 A.D.2d 736, 468 N.Y.S.2d 639 (1st Dep't 1983) ................................................. 11

## Statutes and Rules

Business Corporation Law § 501(c) .................................................................. *passim*

General Business Law § 352-eeee ...................................................................... 7, 13

13 NYCRR 18.3 ................................................................................................... 7, 14

Plaintiff William Dunnegan ("Dunnegan") respectfully submits this memorandum in opposition to the motion of defendant 220 East 54th Street Owners, Inc. ("220 Owners") to dismiss the complaint.

## Preliminary Statement

Dunnegan is a shareholder of 220 Owners, a cooperative apartment corporation, holding the unsold shares allocated to two apartments.  The documents that govern the relationship between 220 Owners and its shareholders – which the Attorney General of the State of New York approved – include the Offering Plan and Proprietary Lease ("Governing Documents").  The Governing Documents define unsold shares as: shares that the Sponsor (of the conversion from a rental to a co-op) sold, directly or indirectly, to persons who would own the shares, and the proprietary leases allocated to those shares.  These proprietary leases would be subject to rent-controlled or rent-stabilized leases of the then-existing tenants of the apartments.  These rent-controlled or rent-stabilized leases ordinarily involve substantially below market rents, that can be transferred to a successor with a certain relationship to tenant.  Dunnegan nevertheless assumed those risks, in part because the Governing Documents grant holders of "unsold shares" certain valuable rights after the rent-controlled or rent-stabilized tenancies ended.  These rights include the right to sublet the apartments without the consent of 220 Owners. (Dkt. 1 at 3-4/10)

Since the inception of 220 Owners, all parties to the Governing Documents have treated the rights of owners of unsold shares as valid and enforceable.  Each shareholder of 220 Owners accepted these rights of holders of unsold shares as part of their proprietary lease when they purchased their shares.  Indeed, to settle an earlier lawsuit with Dunnegan, 220 Owners consented to a declaratory judgment ("2006 Declaratory Judgment") that provided the unsold shares of Dunnegan "may be assigned or sublet without any consent of [220 Owners], including its Board of

Directors, Shareholders and Managing Agent and without payment of any discriminatory fee..."
(Dkt. 1-2), meaning a fee charged to all shareholders equally.  Having outlasted his rent controlled
and rent stabilized tenants, Dunnegan owned valuable rights.

Then, on March 2, 2020, 220 Owners purported to change the rules – that had been in place
for more than 30 years – so that 220 Owners could have more power and charge more money.
Specifically, 220 Owners purported to make certain unilateral modifications to the Governing
Documents that, among other things, extinguished rights of owners of unsold shares, including
Dunnegan ("March 2 Unilateral Modifications").  Under the March 2 Unilateral Modifications, (a)
all subleases by holders of unsold shares would be subject to approval of 220 Owners (Dkt. 1-3 at
3/18), (b) 220 Owners could delay for up to six weeks before accepting or rejecting any proposed
sublease (Dkt. 1-3 at 4/18), and (c) even if approval was obtained, the fees that 220 Owners
proposed to charge for the sublease would render owning the apartment a losing proposition.
(Dkt.1-3 at 4/18)  While its attorneys now characterize this power and money grab as "clarifying"
the rights of the parties (Dkt. 16 at 9/24), the managing agent of 220 Owners candidly admitted on
March 5, 2020, that this change eliminated rights of holders of unsold shares. (Dkt. 1-3 at 2/18)
There was no legal basis to do so.

By making the March 2 Unilateral Modifications to the Governing Documents, 220
Owners (a) breached its contract with, and breached its fiduciary duty to, owners of unsold shares,
and (b) acted in violation of the 2006 Declaratory Judgment.  Dunnegan is therefore seeking to
obtain (a) a declaration that 220 Owners acted unlawfully in making the March 2 Unilateral
Modifications, (b) an injunction restraining 220 Owners from taking any action inconsistent with
the Governing Documents or the 2006 Declaratory Judgment, and (c) damages against 220 Owners
based upon its unlawful actions.

## Statement of Facts

The material facts are set forth in the complaint, and are incorporated herein.

## Argument

## I.

## BECAUSE THE RIGHTS THAT THE GOVERNING DOCUMENTS GRANT TO HOLDERS OF UNSOLD SHARES ARE NOT CONTRARY TO PUBLIC POLICY, DUNNEGAN HAS PROPERLY STATED A FIRST CLAIM FOR RELIEF

The contract between Dunnegan and 220 Owners is set forth in the Governing Documents.  Under paragraph 38 of each of Dunnegan's proprietary leases, Dunnegan is a holder of unsold shares and entitled to certain rights, including the right to sell and sublease the apartments allocated to the unsold shares and the right to be free of discriminatory charges. (Dkt. 1-1 at 3/4; 1-2)  Paragraph 38(b) provides:

> "Subletting Apartment and Sales of Shares
>
> (b)     Neither the subletting of the Apartment nor the assignment of this Lease, by the Lessee who is the holder of the block of Unsold Shares allocated thereto, shall require the consents of the Directors or shareholders, as provided in Paragraphs 15 and 16." (Dkt. 1-1 at 3/4)

Through the March 2 Unilateral Modifications, 220 Owners decided that it would no longer honor the contractual rights of holders of unsold shares set forth in the Governing Documents.  A March 5, 2020, memo from the managing agent provides:

> "In light of a recent appellate court decision in our jurisdiction and governing statute, [220 Owners] is now obligated to treat all shareholders equally with respect to subletting, including the assessment of fees.
>
> **The exemptions once enjoyed by holders of unsold shares, pursuant to paragraph 38 of the co-op's proprietary lease have been deemed void as against public policy**. Consequently, the board has recently amended its sublet policy to reflect this change, including the consent requirements and assessment of fees on all subletting shareholders, including holders of unsold shares.

The board resolution ratifying this amendment of the sublet policy along with other recent amendments is enclosed or attached herein." (Emphasis added.) (Dkt. 1-3 at 2/18)

Accordingly, 220 Owners does not dispute either that the Governing Documents create an enforceable contract with Dunnegan or that 220 Owners would be in breach of that contract, but for its argument that the rights granted in Paragraph 38 of the Proprietary Lease are void as against public policy.

**A.** **Governing Documents That Grant Rights To Holders**
**Of Unsold Shares Are Fully Consistent With Public Policy.**

While established New York law allows Governing Documents to grant holders of unsold shares rights that other shareholders do not enjoy, 220 Owners seek to overturn that established law by citing Section 501(c) of the New York Business Corporation Law ("BCL"), and relying upon one sentence from a case decided in February 2019.

**1.** **Governing Documents May Lawfully Grant**
**Holders Of Unsold Shares Additional Rights.**

Under New York law, governing documents of a co-op may lawfully grant holders of unsold shares rights that other shareholders do not enjoy, without implicating any public policy concerns under Section 501(c) of the BCL, or otherwise.

- *Mogulescu v. 255 W. 98th St. Owners Corp.*, 135 A.D.2d 32, 38, 523 N.Y.S.2d 801, 804 (1st Dep't 1988)("While it is true that certain preferences and exemptions have been created for holders of unsold shares, the voting rights themselves are substantially equal per share.").

- *Rego Park Gardens Assocs. v. Rego Park Gardens Owners, Inc.*, 174 A.D.2d 337, 340, 570 N.Y.S.2d 550, 552 (1st Dep't 1991)("Preferences routinely created for sponsors holding unsold shares in cooperative conversion plans approved by the

Attorney–General have been held not to impair the equality of voting rights of
shares.").

- *Susser v. 200 E. 36th Owners Corp.*, 262 A.D.2d 197, 197–98, 692 N.Y.S.2d 334
  (1st Dep't 1999)("The exemption from subletting restrictions and fees in favor of
  the holders of unsold shares was, however, permissibly imposed on the
  cooperative's Board of Directors pursuant to the offering plan governing
  defendant's cooperative conversion…").

- *Yatter v. Cont'l Owners Corp.*, 22 A.D.3d 573, 574, 802 N.Y.S.2d 239, 241 (2d
  Dep't 2005)("In addition, there is no merit to the defendant's contention that
  Business Corporation Law § 501(c) prohibits an offering plan or proprietary lease
  from exempting a holder of unsold shares from sublet fees or board-approval
  requirements applicable to other shareholders…").

- *Tiemann Place Realty, LLC v. 55 Tiemann Owners Corp.*, 141 A.D.3d 56, 63, 33
  N.Y.S.3d 174, 178–79 (1st Dep't 2016)("Respondents claim that construing the
  stipulation as binding upon all of TPR's assignees who are [holders of unsold
  shares] would violate Business Corporation Law (BCL) § 501(c) by treating
  [holders of unsold shares] differently from other coop shareholders
  (*see* BCL § 501[c] ['each share shall be equal to every other share of the
  same class']). This argument is without merit.").

The argument of 220 Owners – that *Susser* is a "lone" case (Dkt. 16 at 15/24, fn. 12) – is flat out
wrong.

The New York Court of Appeals has adjudicated at least one case – which 220 Owners
does not cite – in favor of the rights of holders of unsold shares to sublet an apartment without

the approval of, or the payment of a fee to, the cooperative corporation. *Kralik v. 239 E. 79th St. Owners Corp.*, 5 N.Y.3d 54, 59, 832 N.E.2d 707, 709 (N.Y. 2005)("In short, the terms of the controlling documents—not part 18—determine whether plaintiffs are holders of unsold shares. Plaintiffs' status must be decided by applying the usual rules of contract interpretation to those documents (*see e.g. Fe Bland v. Two Trees Mgt. Co.,* 66 N.Y.2d 556, 563, 498 N.Y.S.2d 336, 489 N.E.2d 223 [1985] ['The relationship between the shareholder/lessees of a cooperative corporation and the corporation is determined by the certificate of incorporation, the corporation's bylaws and the proprietary lease under which a particular apartment is occupied, subject, of course to applicable statutory and decisional law'] ).").  (Footnote omitted.).  If allowing governing documents to grant rights to holders of unsold shares were contrary to public policy, then the Court of Appeals would have addressed that issue before ruling on the requirements for being a holder of unsold shares.

The statute that has provided the basis for challenges to the rights of holders of unsold shares, Section 501(c) of the BCL, provides, in relevant part, that "each share shall be equal to every other share of the same class."  In rejecting arguments that Section 501(c) prevents the enforcement of the rights of holders of unsold shares, courts have relied upon three related legal theories.

**First**, at least one court has held that the differences in the treatment of holders of unsold shares result from the proprietary lease, not from the voting rights of the shares, which remain equal. *Mogulescu v. 255 W. 98th St. Owners Corp.*, 135 A.D.2d 32, 38, 523 N.Y.S.2d 801, 804 (1988)("While it is true that certain preferences and exemptions have been created for holders of unsold shares, the voting rights themselves are substantially equal per share.").

**Second**, some courts have held that the unsold shares are a *de facto* separate class of shares because the governing documents impose different risks and obligations on holders of unsold shares, as compared to other shareholders. *Tiemann Place Realty, LLC v. 55 Tiemann Owners Corp.*, 141 A.D.3d 56, 63, 33 N.Y.S.3d 174, 178–79 (1st Dep't 2016)("Respondents claim that construing the stipulation as binding upon all of TPR's assignees who are [holders of unsold shares] would violate Business Corporation Law (BCL) § 501(c) by treating [holders of unsold shares] differently from other coop shareholders (*see* BCL § 501[c] ['each share shall be equal to every other share of the same class'] ). This argument is without merit. [Holders of unsold shares] effectively constitute a separate class of shareholders, and coop plans that treat them differently from other shareholders 'have been held not to impair the equality of voting rights of shares' (citation omitted)". *Rego Park Gardens Assocs. v. Rego Park Gardens Owners, Inc.*, 174 A.D.2d 337, 340, 570 N.Y.S.2d 550, 552 (1st Dep't 1991)("Preferences routinely created for sponsors holding unsold shares in cooperative conversion plans approved by the Attorney–General have been held not to impair the equality of voting rights of shares.").

**Third**, some courts have focused on the economic basis for distinguishing between the two types of shares without reaching the issue of whether there is *de facto* a separate class of shares.  The Appellate Division in *Susser v. 200 E. 36th Owners Corp.*, 262 A.D.2d 197, 197–98, 692 N.Y.S.2d 334 (1st  Dep't 1999), explained the economic basis for treating holders of unsold shares differently than other shareholders:

> "Plaintiff asserts that the exemption of holders of unsold shares from subletting restrictions and fees imposed on shareholder-tenants such as himself constitutes differing treatment of holders of the same class of stock in violation of Business Corporation Law § 501 (c). **The exemption from subletting restrictions and fees in favor of the holders of unsold shares was, however, permissibly imposed on the cooperative's Board of Directors pursuant to the offering plan governing defendant's cooperative conversion (*see*, 13 NYCRR 18.3 [w] [8]**). The exemption of the sponsor, as holder of unsold shares, from defendant cooperative corporation's otherwise applicable strictures

7

as to subletting is, moreover, justified by obligations imposed upon the sponsor that are not shared by other shareholders. **The sponsor must provide renewal leases to non-purchasing tenants who remain in possession pursuant to a non-eviction plan** (*see,* General Business Law § 352-eeee), and the discharge of that obligation would be rendered difficult, if not impossible, by subjecting the sponsor to restrictions on subletting applicable to other cooperative proprietary leaseholders." (Emphasis added.)

Regardless of the rationale for upholding their rights, holders of unsold shares took risks and assumed burdens that other shareholders did not. Holders of unsold shares purchased the shares allocated to apartments of rent-controlled or rent-stabilized tenants, who almost without exception pay below market rent. The holders of unsold shares also took the risk that they would never be able to occupy the apartments, because the existing tenants could outlive them, and/or that relatives of the existing tenants could exercise their statutory right to succeed to the rent-controlled or rent-stabilized tenancy of the original tenant. Compensating the holders of unsold share for taking those risks and assuming those burdens should not offend any public policy.

2.    **The Argument Of 220 Owners That The**
      **Law Changed In 2019 Borders On Frivolous.**

The entire argument of 220 Owners – that the rights the Governing Documents grant to holders of unsold shares are contrary to public policy – rests upon one sentence from a 2019 Appellate Division case, *Pastena v. 61 W. 62 Owners Corp.*, 169 A.D.3d 600, 95 N.Y.S.3d 44 (1st Dep't 2019). That decision provides in its entirety:

> "Order, Supreme Court, New York County (Nancy M. Bannon, J.), entered July 21, 2017, which denied plaintiff's motion for summary judgment on the complaint for declaratory relief, and granted defendant's motion to dismiss the complaint, unanimously modified, on the law, to deny defendant's motion, and to declare that plaintiff is not a holder of unsold shares, and otherwise affirmed.
>
> **On this motion, Plaintiff has failed to provide sufficient documentary evidence demonstrating that she is a holder of unsold shares in the corporation** (*see Kralik v 239 E. 79th St. Owners Corp.*, 5 NY3d 54, 59 [2005]; *Sassi-Lehner v Charlton Tenants Corp.*, 55 AD3d 74, 78-79 [1st Dept 2008]).
>
> However, even if factual issues were presented by plaintiff's contract of sale, **paragraph 38 of the proprietary lease, which purportedly exempts holders of unsold shares**

8

**from certain expenses and fees assessed by the landlord, is void as a matter of law**
(*see Spiegel v 1065 Park Ave. Corp.*, 305 AD2d 204 [1st Dept 2003]).

Upon finding that the documentation established that plaintiff was not entitled to the
declaration she sought, the court should have declared in defendant's favor, rather than
dismissing the action (*Rotblut v 150 E. 77th St. Corp.*, 79 AD3d 532, 533 [1st Dep't
2010])." (Emphasis added.)

*Pastena* is distinguishable on its facts.  The record in the trial court in that case contains

no evidence that the plaintiff shareholder acquired the shares and the proprietary lease subject to

the rights of any rent-controlled or rent-stabilized tenant. (Weiss Dec. Exs. A-D)  Rather, the

plaintiff shareholder in *Pastena* appears to have purchased a vacant apartment based upon the

seller's representation that she would never have to pay sublet fees.  Therefore, as the Appellate

Division found, the plaintiff shareholder therefore was never a holder of unsold shares.  This

stands in sharp contrast to Dunnegan's purchase of the shares of 220 Owners subject to the rights

of a rent-controlled tenant in apartment 12A and a rent-stabilized tenant in apartment 6L. (Dkt. 1

at 4/10)

Contrary to 220 Owner's argument, the proprietary lease in *Pastena* is not "in all material

respects identical to the proprietary lease in this action." (Dkt. 16 at 15/24) Specifically, the

definition of unsold shares in the proprietary lease in that case is different than the definition of

unsold shares in the Governing Documents.  The proprietary lease in *Pastena* provides:

"38. (a) The term 'Unsold Shares' means and refers to shares of the Lessor which have
been issued or transferred either to individuals designated by the Sponsor of the
Cooperative Offering Plan in connection with the premises owned by Lessor ('Plan') and
referred to in the Plan as "Successor Offerors of Designees" (including, without limitation,
individual partners of the Sponsor or individual shareholders of any such partner), to
acquire Unsold Shares as provided in the Plan, or by a nominee(s), or designee(s) of such
individuals; and all shares which are Unsold Shares retain their character as such
(regardless of transfer) until an individual purchases same as a purchaser for occupancy
(by himself or a member of his family)." Dkt. 15-2 at 32/52.

Thus, in *Pastena*, the unsold shares would retain their character after the purchaser became an occupant of the apartment.  In the Governing Documents, the unsold shares would not retain their character after the purchaser became an occupant of the apartment.  This Court would only be guessing as to whether that distinction made any difference in *Pastena*, because the Appellate Division did not set forth any reason for its one-sentence alternative holding.

The authority that *Pastena* relied upon, *Spiegel v. 1065 Park Ave. Corp.*, 305 A.D.2d 204, 205, 759 N.Y.S.2d 461 (1st Dep't 2003), apparently involved a different fact pattern than either *Pastena* or this case.  There, the Court's decision did not turn on the plaintiff's attempt to draw a distinction between holders of unsold shares, a term that does not appear in the opinion, and other shareholders, but rather the distinction between an original or a nonoriginal purchaser. *Id*. ("There is no question that lease paragraph 38 and the related bylaw provision violate Business Corporation Law § 501 (c) by giving original purchasers more favorable subletting rights than nonoriginal purchasers.").

The other cases that 220 Owners relies upon do not involve holders of unsold shares or a court declaring provisions in the governing documents of a co-op contrary to public policy.

> *Fe Bland v. Two Trees Mgmt. Co.*, 66 N.Y.2d 556, 489 N.E.2d 223 (N.Y. 1985), involved a "flip tax" policy that a coop board adopted without any authority in its governing documents. ("A fee on the transfer of shares in a cooperative apartment corporation (commonly called a 'flip tax') may not be imposed by the corporation's board of directors, when the bylaws of the corporation authorize the board to impose on such a transfer and assignment only 'a reasonable fee to cover actual expenses and attorneys' fees of the Corporation, a service fee of the Corporation and such other conditions as it may determine.'") *Id.* at 559.

> *Razzano v. Woodstock Owners Corp.*, 111 A.D.3d 522, 975 N.Y.S.2d 38 (1st Dep't 2013), involved a sublet policy that a coop board adopted without any authority in its governing documents. ("In this dispute between plaintiff shareholder and defendant Woodstock, a cooperative corporation, the sublet policy at issue, which allows those who purchased their shares before October 2002 to sublet, while prohibiting those who purchased their shares after that date from subletting, violates Business Corporation Law § 501(c).")  *Id.* at 523.

10

     *Bregman v. 111 Tenants Corp.*, 97 A.D.3d 75, 943 N.Y.S.2d 100 (1st Dep't 2012), involved rights arising not from the governing documents, but from an oral representation of the seller of the shares. ("[P]laintiff's professed understanding that she would have 'full, unconditional and perpetual sublet rights' is not reflected in any of the formal documents that she signed. The proprietary leases executed by plaintiff contain an explicit provision requiring board authorization for subletting…") *Id.* at 77.  Moreover, the Court expressly declined to consider plaintiff's argument that she was a holder of unsold shares, because that issue was never raised in the trial court and therefore was not preserved for review. *Id.* at 85.

     *McCabe v. Hoffman*, 138 A.D.2d 287, 526 N.Y.S.2d 93 (1st Dep't 1988), involved the co-op's imposition of a sublet fee that the governing documents allowed the co-op to impose. ("For all of the foregoing reasons, the Supreme Court was not warranted in declaring invalid the subleasing surcharge *(see, Zuckerman v. 33072 Owners Corp.*, 97 AD2d 736, 737, [468 N.Y.S.2d 639 (1st Dep't 1983),] wherein this court stated that the board therein had 'the authority under the proprietary lease to levy a reasonable sublet fee'"). *Id.* at 290.

The fact that 220 Owners now uses the March 2 Unilateral Modifications to treat shareholders differently based upon whether they sublet their apartment and for how long they sublet it, demonstrates that 220 Owners does not even believe the argument that its lawyers are now making.  Under the guise of treating all shareholders the same, 220 Owners is creating significant differences in the way it treats its shareholders.  Under the March 2 Unilateral Modifications, shareholders will be charged maintenance not based upon the number of shares that they own, but based upon (a) whether or not they are subletting their apartment, and more importantly, (b) the length of time that they are subletting it.  For example, a shareholder who resides in the apartment will pay the base maintenance fee.  The shareholder one door down the hall, with an identical number of shares, but who sublets the apartment for one year, will be charged 15 percent more than the base maintenance fee the first year of the sublet. (Dkt. 1-3 at 4/18)  Another shareholder two doors down the hall, with an identical number of shares, but who subleases the apartment for 10 years will pay 79 percent more than the base maintenance than the first shareholder. (Dkt. 1-3 at 4/18)  While the Governing Documents may not protect

11

shareholders from this – unless they are holders of unsold shares – 220 Owners is treating shareholders differently even though they have the same number of shares.

220 Owners may argue that there is a good reason to treat shareholders differently based upon whether or not they sublease their apartments.  But if good reason provides a lawful basis to treat shareholders differently, then there is a good reason, and a lawful basis, to treat holders of unsold shares differently than other shareholders.

And 220 Owners has (apparently) decided to allow certain rights of holders of unsold shares to stand, unaffected by its epiphany that certain other rights of holders of unsold shares violate public policy.  Paragraph 38 of the proprietary lease grants holders of unsold shares not only the right to sublet their apartments without approval of 220 Owners, but also the right to sell their shares, and assign their proprietary lease, without approval of 220 Owners.  220 Owners does not purport to extinguish this right.  Accordingly, the conduct of 220 Owners demonstrates that 220 Owners knows that public policy does not require all shareholders to be treated identically, and acknowledges that some rights of holders of unsold shares are fully enforceable. The March 2 Unilateral Modifications are therefore not a misguided attempt to comply with the law, but a disingenuous attempt by 220 Owners to grab power and money at the expense of holders of unsold shares.

## B.     The Remedy For Any Illegality Is To Give All <u>Shareholders The Rights Of Holders Of Unsold Shares.</u>

220 Owners position is also disingenuous because 220 Owners unilaterally decided that the way to remedy its claimed inequality (that it perceived to be inconsistent with public policy) was to eliminate contractual rights of holders of unsold shares.  220 Owners could have, just as fairly, expanded the rights of all shareholders to the level of the rights of the holders of unsold shares.  In other words, 220 Owners could have eliminated the claimed inequality by granting all

shareholders the right to sublet without approval of 220 Owners and without the imposition of

discriminatory fees.  The March 2 Unilateral Modifications therefore represent 220 Owners'

choice to breach the contract with Dunnegan, not a choice that the law compelled 220 Owners to

make.  The net result of its decision is that 220 Owners is seeking to benefit from its newly found

right to collect discriminatory fees.

The proprietary lease, however, required 220 Owners to protect the rights of holders of

unsold shares against later attempts to change the proprietary lease to reduce their rights.

Paragraph 38(c) provides:

> "Change in Form of Lease
>
> (c)      Without the consent of the Lessee, **no change in the form, terms or conditions of this Proprietary Lease**, as permitted by Paragraph 6, **shall (1) affect the rights of the Lessee who is the holder of the Unsold Shares** accompanying this lease to sublet the Apartment or to assign this Lease, as provided in this Paragraph, or (2) eliminate or modify any rights, privileges or obligations of such Lessee." (Emphasis added.)

Paragraph 38(c) of the proprietary lease therefore protects holders of unsold shares from exactly

the conduct of 220 Owners that is the subject of this case.

New York Law required a clause like this to be in the proprietary lease.  NY Gen. Bus.

Law 352-eeee provides:

> "2. The attorney general shall refuse to issue a letter stating that the offering statement or prospectus required in subdivision one of section three hundred fifty-two-e of this article has been filed whenever it appears that the offering statement or prospectus offers for sale residential cooperative apartments or condominium units pursuant to a plan unless: …
>
> (c) The plan provides, if it is a non-eviction plan, as follows:…
>
> (x) The rights granted under the plan to purchasers under the plan and to non-purchasing tenants may not be abrogated or reduced notwithstanding any expiration of, or amendment to, this section."

13

The argument of 220 Owners that it could not, or need not, expand the rights of other owners is incorrect.  220 Owners' reliance upon *Susser v. 200 E. 36th Owners Corp.*, 262 A.D.2d 197, 197–98, 692 N.Y.S.2d 334 (1st Dep't 1999), and *Krakauer v. Stuyvesant Owners, Inc.*, 301 A.D.2d 450, 451, 753 N.Y.S.2d 367 (1st Dep't 2003), is misplaced.

*Susser* involved a shareholder, who was not a holder of unsold shares, arguing that the provisions in the proprietary lease that granted additional rights to holders of unsold shares meant that the restrictions imposed upon him were unenforceable.  The Appellate Division rejected that argument, holding that the additional rights granted to holders of unsold shares were lawful, and need not be expanded to include all shareholders.  262 A.D.2d at 197-198 ("The exemption from subletting restrictions and fees in favor of the holders of unsold shares was, however, permissibly imposed on the cooperative's Board of Directors pursuant to the offering plan governing defendant's cooperative conversion (*see,* 13 NYCRR 18.3 [w] [8]).").

*Krakauer's*, one-paragraph opinion, appeared to involve a plaintiff, not described as a holder of unsold shares, arguing that, by putting an illegal preferential leasing provision (of unknown substance) in the proprietary lease, the defendant co-op had lost its right to regulate sub-tenancies, an argument the Court rejected. 301 A.D.2d at 451.

In any event, neither case involved a decision by a co-op to choose to unilaterally expand its rights by eliminating the rights of holders of unsold shares, rather than granting all shareholders additional rights.

Accordingly, the March 2 Unilateral Modifications represent a breach of the Governing Documents and the arguments of 220 Owners that the Governing Documents are inconsistent with public policy provide no basis to dismiss Count I of the complaint.

## II.

### BECAUSE THE 2006 DECLARATORY JUDGMENT ESTOPS 220 OWNERS FROM ARGUING THAT THE GOVERNING DOCUMENTS ARE UNENFORCEABLE, THE COURT SHOULD NOT DISMISS DUNNEGAN'S SECOND CLAIM FOR RELIEF

220 Owners does not dispute that, while represented by highly sophisticated co-op counsel at Stroock & Stroock & Lavan LLP, 220 Owners and Dunnegan entered into the 2006 Declaratory Judgment to settle an earlier lawsuit that involved the enforceability of rights of holders of unsold shares.  The 2006 Declaratory Judgment provided in applicable part:

> "**the shares of Dunnegan allocated to apartments 12A and 6L** on the date hereof (i) are Unsold Shares with the meaning of paragraph 38 of the proprietary leases of Freedman and Dunnegan, and (ii) **may be assigned or sublet without any consent of [220 Owners], including its Board of Directors, Shareholders and Managing Agent and without payment of any discriminatory fee**…" (Emphasis added.)

The Supreme Court of the State of New York for the County of New York entered this 2006 Declaratory Judgment. (Dkt. 1-2)

Under controlling law, this 2006 Declaratory Judgment represented, at a minimum, a contract between 220 Owners and Dunnegan.  In *19th St. Assocs. v. State*, 79 N.Y.2d 434, 442, 593 N.E.2d 265, 266 (N.Y. 1992), the New York Court of Appeals stated:

> "Both lower courts found, and both sides apparently agree, that the consent judgment constitutes a contract. We too conclude that the consent judgment, which represents a settlement of the claims against the respondents, is in the nature of a contractual obligation since it contains a number of promises that are supported by valid consideration, and is legally enforceable according to its terms…"

The 2006 Declaratory Judgment also represents a judgment resolving issues concerning the rights of Dunnegan as the holder of unsold shares, that principles of *res judicata* prevent 220 Owners from relitigating. *Davlee Const. Corp. v. Brooks*, 21 Misc.2d 137, 142, 188 N.Y.S.2d 847, 852 (Sup. Ct. Nassau Cty. 1959)("The application of the principle of *res judicata* in the

foregoing case is in harmony with the rule in New York that '[g]enerally speaking, a declaratory judgments is *res judicata* in the same manner and extent as any other judgment' (7 Carmody-Wait, New York Practice, p. 490 and cases cited under § 217; see, also, Restatement, Judgments, § 77; annotation: 'Extent to which principles of *res judicata* are applicable to judgments in actions for declaratory relief', 10 A. L. R. 2d 782).");  *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 639 (2d Cir. 1987)("The general rule is that a final consent decree is entitled to *res judicata* effect.").  220 Owners is therefore bound not only by the contract that this document represents but also its *res judicata* effect.

The only argument 220 Owners makes to attempt to avoid the consequences of the 2006 Declaratory Judgment is that it involves an agreement that is contrary to public policy.  220 Owners' reliance upon *Riverside Syndicate, Inc. v. Munroe*, 10 N.Y.3d 18, 23, 882 N.E.2d 875 (N.Y. 2008), is misplaced.  That case involved parties who (a) knew that the settlement agreement that they entered into, and the court (apparently unknowingly) approved, was illegal at the time they entered into to it, and (b) they asked the court to approve it so that the parties could achieve an unlawful purpose.  The Court in *Riverside Syndicate* stated:

> "We find the agreement to be within neither the letter nor the spirit of the law, because it was not a bona fide settlement of the parties' dispute. The argument for upholding the agreement would be stronger if, in 1996, the parties had had a dispute about the amount of the legal maximum rent, and had compromised at a figure above the tenants' and below the landlord's. But the 'compromise' in this case put the rent roughly 50% higher than the highest rent the landlord could have demanded. The obvious purpose of the settlement was not to resolve a dispute about what the law permitted, but to achieve something the law undisputedly did not and does not permit." *Id*. at 23.

In this case, there is no evidence, on the face of the complaint or otherwise, that the 2006 Declaratory Judgment represented anything other than the *bona fide* settlement of a dispute between the parties.

The March 2 Unilateral Modifications are inconsistent with the 2006 Declaratory

Judgment.  The March 2 Unilateral Modifications plainly impair the right of Dunnegan to sublet

his apartments without approval of 220 Owners, and charge Dunnegan discriminatory fees.

The 2006 Declaratory Judgment requires 220 Owners to treat Dunnegan in a certain

manner.  But it does not require 220 Owners to treat other shareholders in any manner.  220

Owners could therefore have obeyed the 2006 Declaratory Judgment and still treated all

shareholders equally by granting all shareholders the same rights as the Governing Documents

grant to holders of unsold shares.  Any violation of public policy that 220 Owners now claims to

exist would result from a violation of public policy that 220 Owners has itself created.

### III.

### BECAUSE A CLOSE CORPORATION CAN OWE A FIDUCIARY DUTY TO ITS SHAREHOLDERS, THE COURT SHOULD NOT DISMISS DUNNEGAN'S THIRD CLAIM FOR RELIEF

The argument of 220 Owners that it does not own a fiduciary duty to Dunnegan is

incorrect as a matter of law. *Nainan v. 715-723 Sixth Ave. Owners Corp.*, 177 A.D.3d 489, 490,

113 N.Y.S.3d 50, 52 (1st Dep't 2019)(affirming denial of summary judgment against co-op on

breach of fiduciary duty claim).

In any event, 220 Owners would be responsible for the acts of its officers and directors in

breach of their fiduciary duty to Dunnegan. *Shostack v. Diller*, 15 Civ. 2255 (GBD)(JLC), 2015

WL 5535808, at *5 (S.D.N.Y. Sept. 16, 2015), *report and recommendation adopted*, 15 Civ.

2255 (GBD)(JLC), 2016 WL 958687 (S.D.N.Y. Mar. 8, 2016)("Although it is well-established

that principals or employers may be vicariously liable for the acts of their agents or employees

acting in the scope of their authority or employment, it is equally well-established that absent

'special circumstances[,] it is the corporation, not its owner or officer, who is the principal or

employer, and thus subject to vicarious liability for torts committed by its employees or agents.' *Meyer v. Holley,* 537 U.S. 280, 286, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003)").

If the Court rejects the arguments set forth above, Dunnegan respectfully requests leave to replead to assert a claim against the individual members of the Board of Directors for breaching their fiduciary duty to Dunnegan.

<u>**Conclusion**</u>

For the reasons set forth above, Dunnegan respectfully requests that the Court deny 220 Owners' motion to dismiss.

Dated:  New York, New York
        June 12, 2020

                                DUNNEGAN & SCILEPPI LLC

                                By_____
                                    Laura Scileppi (LS0114)
                                    ls@dunnegan.com
                                    Richard Weiss (RW4039)
                                    rw@dunnegan.com
                                Attorneys for the Plaintiff
                                350 Fifth Avenue, 76th Floor
                                New York, New York 10118
                                (212) 332-8300

18