# Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 162453/2014

---------------------------------------x

JANIS PASTENA

Plaintiff

-Against-

61 WEST 62 OWNERS CORP.

Defendant

---------------------------------------x

**SUPPORTING AFFIDAVIT
FOR SUMMARY JUDGMENT
MOTION BY PLAINTIFF**

JANIS PASTENA, being duly sworn, deposes and says:

1.     I am the Plaintiff herein and as such am fully familiar with the facts and circumstances heretofore had herein, and submit this affidavit in support of Plaintiff's Motion which seeks an Order granting Plaintiff summary judgment pursuant to CPLR §3212 on the grounds that there is no genuine issue as to any material fact and that plaintiff is entitled to judgment as a Matter of Law, and that defendant's claims are moot.

The Sponsor's unsold shares were sold approximately 28 years ago to plaintiff for investment purposes thus defendant's past Boards have recognized that an exclusion exists for unsold shares as a Special Status as contained in the Offering including Attorney General's Regulations (AG's Regs.) of 61 West 62 Owners Corp. allowing Plaintiff and others similarly situate a Special Reservation of Rights regarding a perpetual right to Plaintiff to sublet without Board Approval.

**PROCEDURAL HISTORY**

2.     The within action was commenced by the service of a Summons and Complaint on or about December 17, 2014 (Dkt. #'s 1, 2).  An Answer was interposed by

1

the Defendants on or about November 19, 2015 (Dkt. #'s 9), Stipulations to extend time to Answer were agreed to (Dkt. #'s 7, 8) while informal discovery including the exchange of documents occurred with defendant's original counsel in an effort to settle this matter; a copy of Plaintiff's S&C and Defendant's Answer are annexed hereto as Plaintiff's Exhibits "A" and "B" respectively.  Informal discovery confirmed two (2) facts that favors plaintiff as a matter of law, (a) 28 years ago she purchased the unsold shares from the Sponsor and (b) the Offering with the Attorney General (AG) under AG's Regulations contained an exclusion for unsold shares.

3.    Thereafter, Plaintiff served on May 29, 2016 a Notice to take the defendant's deposition on July 8, 2016 (Dck. #'s 9), copy of the   same is annexed hereto as Plaintiff's Exhibit "C" plus a Discovery and Inspection Notice for defendants to produce documents returnable at our offices on July 1, 2016, a copy of the   same is annexed hereto as Plaintiff's Exhibit "D"

4.    Then thereafter, Plaintiff served on May 30, 2016 Plaintiff's Combined Demands. A copy of the  same is annexed hereto as Plaintiff's Exhibit "E"

5.    New counsel has entered the case effective with June 29, 2016 (Dkt. #'s 14) and indicates by E-mail defendant's designated witness in Exhibit "C" will not be produced for the purposes of a deposition on July 8, 2016 necessitating the making of this motion.

## BACKGROUND

6.    Defendant 61 WEST 62 OWNERS CORP. is a corporation organized under the laws of the State of New York a/k/a as a cooperative ("Co-op"). The Co-op is a residential co-operative apartment corporation which owns the apartment building located in the City, County and State of New York known as 61 West 62nd Street (the "Building").

2

## Original Subscription Agreement with Plaintiff and Sponsor

7.      Documentation proves that Plaintiff is the original owner of the apartment 20L when converted to a cooperative form of ownership and original subscriber for shares of stock in defendant coop. This documentation provided to prior counsel Robinson Brod to demonstrate no fact issue existed documentation proved that Plaintiff is the original owner of the apartment 20L

8.      It is not disputed by the defendant, that the sponsor informed plaintiff at the time of purchase of her unit, apartment 20L, 61 West 62nd Street, City, County and State of New York, she had unconditional and perpetual subletting rights as she bought for investment purposes and did not intend to reside permanently in the apartment 20-L and bought the same for investment income. The sponsor did not require the plaintiff upon purchase to obtain the prior consent of the Board of Directors of the co-operative nor pay a fee to sublet apartment 20-L. Defendant has known for approximately 28 years this special status her exclusion for having purchased unsold shares and excluded billing her until September 10, 2010

9.      Nor does defendant dispute the fact that plaintiff never would have purchased unit 20L except for the prior agreement that: (a) there were no conditions involving the plaintiff which the board might impose upon her tenancy and/or board or shareholder approval might be required; also (b) no advance consent was required perpetually for subletting; and (c) there would be in perpetuity no fee involved for monthly subletting.

10.      Deponent was informed by the sponsor at the time of purchase of her shares of stock of the Attorney General's Regulations (AG's Regs.) contained in "Offering" of 61 West 62 Owners Corp. allowing Plaintiff and others similarly situate a Special Reservation of Rights regarding a perpetual right to Plaintiff to sublet without Board Approval.

11.    After purchase of her shares, deponent meet attorney Neil Goldstein many times in the building who told her he also had purchased from the sponsor, not one but three (3) units and he too knew upon purchasing of the Attorney General's Regulations (AG's Regs.) contained in "Offering" of 61 West 62 Owners Corp.which provided to (a) Neil Goldstein and (b) others who purchased coop units from Sponsor similarly situated *who were original purchasers enjoyed an inclusion for purchasing unsold shares including a Special Reservation of Rights regarding a perpetual right to Plaintiff and others similarly situate to sublet without Board Approval.*

**Defendant issued a 9/10/14 "Notice to Cure" based upon a "Coop Rules Change" to charge (.075) per share as sublet charge or $330. Retroactively for $5,439.41 for fourteen (14) months prior to 9/10/14;**
**New Board Adopts Sublet Rule different from AG's Regs. Contained in "Offering"** *with an* **exclusion for unsold shares or Co-op's governing documents including by-laws, any rules or regulations promulgated by the Original Board and each Shareholder's Original Proprietary Lease**

12.    To reiterate, attorney Neil Goldstein ("Goldstein" and/or "Original Shareholder") has since become a member of the Board of 61 West 62 Owners Corp. and until this suit was commenced (in conversations with the deponent) did not consider plaintiff's 1987 Special Reservation of Rights *with an exclusion for unsold shares* trumped by a new 2014 Board Rule adopted to charge plaintiff a sublet fee but considered her original status dating back to 1987 as *exclusion for unsold shares* exempting her from the new subletting Rule.

13.    On or about November 14, 2014 plaintiff received a letter dated November 10, 2014 from the Vice President of First Service Properties signed by Jennifer L. Granda, regarding apartment 20L seeking payment of a total sum of $15, 145.71 from the plaintiff, and under the heading "Sublet" "$5, 39.41" is intended to be "$5,439.41," primarily for subletting fees of $330 per month. A copy of the same is annexed hereto as Plaintiff's Exhibit "F"

4

14.    Going back in time approximately 28 years ago to 1987, in reliance upon the written documentation proving that Plaintiff became the original owner of the apartment 20L when converted to a cooperative form of ownership she was the original subscriber for shares of stock in defendant coop. at which time the deponent obtained, to encourage sales and have sponsor meet the requirements of existing law to gain building-wide approval of the Conversion Plan filed with the Attorney General, Plaintiff was told by the sponsor of Attorney General Regulations *with an exclusion for unsold shares*, and governing documents of the coop that there were no conditions attached to future unit subletting, specifically no advance consent plus no fees to be paid to the cooperative. A copy of the Memorandum of the Deputy Attorney General Mary Sabatini Stephani of October 6, 1987 on this subject provided a Court is annexed hereto as Plaintiff's Exhibit "G"

15.    Since 1987 plaintiff has never consented to restrictions on her right to sublet, nor has defendant at any time from 1987 onward been requested to pay a sublet fee until service of Exhibit "F," the Notice of November 10, 2014 seeking a retroactive sublet sum of "$5, 39.41," obviously a mathematical error as one digit is omitted charge (.075) per share as sublet charge or $330. retroactively for $5,439.41 for fourteen (14) months prior to 9/10/14.

**Purchase of Sponsor Apartment for Long Term Investment**

16.    Plaintiff, it was understood by all parties at the time of purchase was an original owner and did not intend long term residence at 61 West 62nd Street, unit 20L further sponsor understood and agreed plaintiff rather purchased the apartment 20L for long term investment purposes once converted to a co-op, therefore pursuant to arrangements with sponsor's terms and conditions in the Offering Plan agreed to by all parties at the time of the purchase, plaintiff was granted the right to sublet unit 20L with (a) no conditions involving the

5

plaintiff which the board might impose upon her tenancy and (b) no Board or shareholder approval might be required or prior written consent of the cooperative's Board of Directors or (c) requiring plaintiff be obligated to pay a subletting fee.

17.   For the entire 26 year period which followed, from 1990 to the present time, plaintiff did not live in the unit as her primary residence but at all times sublet it and fully informed defendant of the names, addresses and financial stability of the subtenants. While the subleases did not require Co-op approval or consent, plaintiff nevertheless provided the Co-op with application information concerning financial stability and trustworthiness of new tenants who came to occupy the unit 20 L. During this entire 26+ year period, there were no issues raised by the defendant or its Board regarding conditions involving the plaintiff which the board might impose upon her tenancy involving sub tenancy, or concerning any actions or conduct by any subtenant adverse to the interests of the Co-op.

18.   Upon information and belief a subsequent Board of 61 West 62 Owners Corp. (since the original Board) has adopted a "New Sublet Rule" in regard to subletting different from and at variance with the AG's Regs. contained in "Offering" or governing documents which "New Sublet Policy" is intended to supplement the provisions of the Co-op's governing documents, including by-laws, any rules or regulations promulgated by the Original Board and each Shareholder's Original Proprietary Lease;

19.   A declaratory judgment is sought from this Court if legal authority exists for 61 West 62 Owners Corp (The Coop") subsequent Board *at its sole discretion,* to adopt a "New Sublet Rule" in regard to subletting different from and at variance with the AG's Regs. contained *in "Offering" with an exclusion for unsold shares* and the governing documents including the by-laws which "New Sublet Policy" by the Board alone (without shareholder approval) is

6

intended to modify and supplement the provisions of the Co-op's governing documents, including changing original AG's Regs. contained in "Offering" *with an exclusion for unsold shares* plus existing rules or regulations and each original Shareholder's Proprietary Lease without taking into account governing documents including the by-laws.

**Waiver and/or Estoppel Bars enforcement of new subletting Policy after 28 years if Board in 2014 alleges in Billing for Sublet with knowledge of claimed breach of lease for approximately 14 prior months**

20.    Neil Goldstein, a current Board Member who has authorized this suit against me, has known of my subletting with numerous sub-tenants for a two decades or more period.

21    Mr. Goldstein is well aware that what is requested by new Boards until service of Exhibit "F", Notice to cure in 2014, is not payment of a monthly subletting fee, but just my providing the name and certain personal information about the proposed sub-tenant.

22.    Once deponent provided the Board with this limited information (name and certain personal information), the sub tenancy is always approved by the Board, my subtenant is allowed to move in, reside in the building and I pay just the maintenance each and every month during the sub tenancy without incident (meaning no monthly billing of a sublet fee by the Board).

23.    Counsel advises that the essence of a waiver is an intentional relinquishment of a known right, therefore if the Current Board including Mr. Goldstein knew it had a right to charge deponent a sublet fee in prior years, or for 14 prior months but did not do so deponent has made out as a matter of law, a right to a declaratory judgment based upon a known Waiver from a strong and clear showing of intent to waive on the part of the Goldstein Board for prior periods including these fourteen (14) months in Exhibit "F", the "Notice to Cure".

7

## CONCLUSION

24.    Approximately 28 years ago, plaintiff purchased apartment 20L for investment purposes thus it is submitted defendant's past Boards have recognized that an exclusion exists for unsold shares as a Special Status as contained in the Offering including Attorney General's Regulations (AG's Regs.) of 61 West 62 Owners Corp. allowing Plaintiff and others similarly situate a Special Reservation of Rights regarding a perpetual right to Plaintiff to sublet without Board Approval.

25.    Waiver and/or Collateral Estoppel bars enforcement of new subletting Policy after 25 years if Board in 2014 alleges in billing for alleged Sublet charges with knowledge of claimed breach of lease dating back approximately fourteen (14) prior months.

26.    If for the prior approximately fourteen (14) prior months before Exhibit "F" the September 10, 2014 Notice to Cure, the defendant accepted the base maintenance (rent) with knowledge of the alleged breach (not paying the $330.per month subletting fee) the defendant is collaterally estopped from serving Exhibit "F", "Notice to Cure" enforcing the Rule authorizing the coop's sublet fee.

27.    Deponent has made out as a matter of law, a right to a declaratory judgment as requested in the Complaint based upon a known Waiver demonstrated by a strong and clear showing of intent to waive on the part of the defendant's past Boards for approximately twenty five (25) years until September 10, 2014 (when Exhibit "F", the "Notice to Cure" was issued and served).

28.    It is respectfully submitted that Waiver of claimed right to sublet fees has occurred as counsel advises that the essence of a waiver is an intentional relinquishment of a known right, therefore if the defendant's past Boards for approximately twenty eight (28) years

8

have recognized that an exclusion exists for unsold shares as a Special Status as contained in the Offering including Attorney General's Regulations (AG's Regs.) of 61 West 62 Owners Corp. allowing Plaintiff and others similarly situate a Special Reservation of Rights regarding a perpetual right to Plaintiff to sublet without Board Approval then the current Board including Mr. Goldstein waived the right to issue and serve on September 10, 2014 Exhibit "F", the instant "Notice to Cure".

29.     The motion for summary judgment should in all respects be granted.

/s/ Janis Pastena

Sworn to before me
This 5th day of July, 2016                    _____
                                                  JANIS PASTENA


/s/ Arthur Morrison

_____
Arthur Morrison
Notary Public
Stag of New York
#02MO5029969
Qualified in Westchester County
Commission Expires 11/24/18

9