UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
WILLIAM DUNNEGAN,
                    Plaintiff,

   -against-

220 EAST 54th STREET OWNERS, INC.,          MEMORANDUM DECISION
                                            AND ORDER
                    Defendant.

                                                       20 Civ. 2418 (GBD)

------------------------------------------x

GEORGE B. DANIELS, United States District Judge:

Plaintiff William Dunnegan ("Dunnegan") brings this action against Defendant 220 54th Street Owners for breach of contract and breach of fiduciary duty. (Compl., ECF No. 1, ¶¶ 29–44.) Specifically, Plaintiff claims that on March 2, 2020, the Defendant implemented a new sublet policy which unilaterally modified the Offering Plan and Proprietary Lease ("Governing Documents") and that in making these modifications Defendant breached its contract with, and fiduciary duty to, Dunnegan and violated a prior declaratory judgment entered in the New York State Supreme Court. (*Id.* at ¶ 2.) Defendant moves to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Notice of Mot. to Dismiss the Compl., ECF No. 14.) Defendant's motion to dismiss is DENIED with regard to the breach of contract claims and GRANTED as to the breach of fiduciary duty claim.

## I.   FACTUAL BACKGROUND

### A. The Cooperative Apartment and Its Governing Documents

Defendant, 220 East 54th Street Owners, Inc., is a New York cooperative corporation that owns and operates a cooperative ("co-op") apartment building located, as its name implies, at 220

East 54th Street, New York, New York. (Compl. ¶¶ 1, 8.) In August 1981, as the result of an Offering Plan, the building was converted from a rental property to a co-op. (*Id.* at ¶ 9.) Defendant, as the Sponsor under the Offering Plan, "owned all the shares" of the cooperative corporation and "offered to sell each existing rent-controlled or rent stabilized tenant the shares . . . and assign the proprietary lease associated with the apartment in which the tenant resided." (*Id.* at ¶ 10.) If a tenant did not buy the shares in their apartment, the Sponsor retained the right to sell these "unsold shares" to outside investors. (*Id.*) These investors, also known as holders of unsold shares, would own the shares in the apartment and be assigned the proprietary lease subject to the rights of the tenant occupying the apartment. (*Id.*)

The Proprietary Lease between the Defendant and its lessees defines "Unsold Shares" as "the shares of the Lessor which were issued to the Lessor's grantor(s) or individuals produced by the Lessor's grantor(s) pursuant to the Plan of cooperative organization of Lessor or to a nominee or designee of such grantor(s) or individuals." (Exhibit A, ECF No. 1-1, ¶ 38(a).) The Proprietary Lease also states that "Unsold Shares retain their character as such (regardless of transfer) until (1) such shares become the property of a purchaser for bona fide occupancy (by himself or a member of his family) of the Apartment to which such shares are allocated, or (2) the holder of such shares (or a member of his family) becomes a bona fide occupant of the Apartment." (*Id.*) Paragraph 38(b) further provides that "neither the subletting of the Apartment nor the assignment of this Lease by the Lessee who is the holder of the block of Unsold Shares allocated thereto, shall require the consents of the Directors or shareholders, as provided in Paragraphs 15 and 16." (*Id.*) Finally, Paragraph 38(e), in relevant part, states that "Lessor shall not prevent nor unreasonably impede or interfere with the sale of any block of Unsold Shares or the subletting of an apartment

to which a block of Unsold Shares is allocated . . . No discriminatory charge or fee may be imposed on any lessee who is a holder of Unsold Shares." (*Id.*)

## B. Dunnegan Purchases Shares and Gets a Declaratory Judgment

Dunnegan asserts that he is a holder of unsold shares in two apartments in the co-op, having purchased "unsold shares" in 1986 and 2005. (*Id.* at ¶¶ 12, 16.) In each instance, Dunnegan purchased his shares subject to the rights of the rent-controlled tenant of the apartment and did not occupy the apartments himself. (*Id.* at ¶¶ 12–24.) In 2005, after Defendant "would not approve him as a purchaser," Dunnegan sued Defendant in New York State Court. (*Id.* at ¶ 18.) The parties ultimately settled that lawsuit by entering into a declaratory judgment, which ordered that "the shares of Dunnegan in 220 East 54th allocated to apartments 12A and 6L, on the date hereof (i) are Unsold Shares within the meaning of paragraph 38 of the proprietary lease . . . and (ii) may be assigned or sublet without any consent of 220 East 54th, including its Board of Directors, Shareholder and Managing Agent and without payment of any discriminatory fee by . . . Dunnegan to 220 East 54th." (Exhibit B, ECF No. 1-2.) Dunnegan has sublet apartments 12A and 6L without the consent of Defendant, since 1989 and 2012 respectively. (Compl. ¶¶ 13–14, 22–23.)

## C. The 2020 Sublet Policy

On March 5, 2020, Dunnegan received a memo from Defendant which stated that due to a "recent appellate court decision in our jurisdiction and governing statute . . . [t]he exemptions once enjoyed by holders of unsold shares, pursuant to paragraph 38 of the co-op's proprietary lease have been deemed void as against public policy." (*Id.* at ¶ 25.) Defendant's memo went on to state that the sublet policy would be changed to include "consent requirements and assessment of fees on all subletting shareholders, including holders of unsold shares." (*Id.*)

3

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully;" stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pleaded must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).[1]

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

---

[1] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

4

## III. PLAINTIFF ADEQUATELY ALLEGES A BREACH OF CONTRACT CLAIM

Defendant does not challenge Dunnegan's status as a holder of unsold shares at this stage of the litigation, but rather premises its motion to dismiss on what it perceives to be a recent change to New York law. It argues that New York courts have "repeatedly invalidated co-op governing documents as violating" New York Business Corporation Law ("BCL") § 501(c), which compels equal treatment for shares of the same class. (Mem. of Law in Supp. of Def's. Mot. to Dismiss ("Def's. Br."), ECF No. 16, at 8–9.) Specifically, Defendant argues that Paragraph 38 of the Proprietary Lease is void as a matter of law following a recent decision by the New York State Appellate Division, First Department, *Pastena v. 61 W. 62 Owners Corp.*, 169 A.D.3d 600 (1st Dep't 2019). (Def's. Br. at 11.) Defendant maintains that *Pastena* is dispositive of this case and that it is the culmination of a "line of cases . . . invalidat[ing] these rights for holders of unsold shares like Mr. Dunnegan. (Def's Br. at 11.)

Plaintiff contends that Defendant relies on dicta in *Pastena*, which was unnecessary to reach the decision in the case, and separately cites to seemingly contrary case law from both the First and Second Departments of New York's Appellate Division. A review of New York case law shows that Plaintiff is correct.

"Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000). While this Court is not bound by decisions of New York State's Appellate Division, it may rely on them to determine how the New York Court of Appeals would approach a legal issue. *See id.* (stating that "the decisions of New York State's Appellate Division are helpful indicators" in determining how the state's highest court would rule.) When there is an "apparent split in authority among the Appellate Divisions" a federal district court must examine

5

"New York and, if necessary, other jurisdiction's case law" to essay this prediction.[2] *Id.* at 116–117.

This case calls upon this Court to resolve an issue that the New York Court of Appeals has not yet addressed: Whether the exemption of holders of unsold shares in a cooperative corporation from sublet fees or board-approval requirements violates the equal treatment clause of New York Business Corporation Law ("BCL") § 501(c). Because the New York Court of Appeals has not explicitly addressed this question, this Court will review available sources – including the statutory language and state and federal case law – in an attempt to predict how that court would resolve the issue. *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994).

Recently, in *Pastena* the First Department held that plaintiff, a lessee, had "failed to provide sufficient documentary evidence demonstrating that she is a holder of unsold shares" in the defendant cooperative corporation. 169 A.D.3d at 600. Importantly, the plaintiff in *Pastena* argued interchangeably that because she was an original purchaser and a holder of unsold shares she was exempt from the consent requirements and the payment of any fee associated with subletting her apartment. (*See* Exhibit C, ECF No. 21-3, ¶¶ 1, 2, 7–8, 11–12, 14, 16, 24, 28.) After determining that plaintiff could not prove she was a holder of unsold shares the court went on, in its single page decision, to state that "even if factual issues were presented by plaintiff's contract of sale, paragraph 38 of the proprietary lease, which purportedly exempts holders of unsold shares

---

[2] Contrary to Defendant's argument that this Court adhere to interpretations of the Appellate Division, First Department because "we are in Manhattan; we are in the Appellate Division First Department" and Defendant's building is in Manhattan and within the First Judicial Department (Def's Br. at 7, 11; *see also* Tr. of Oral Arg. dated Oct. 22, 2020, 48:4–5.) this Court must consider New York case law generally and may not simply choose one department's law over another based on the locus of the apartment building. *See Home Depot*, 225 F.3d 113 at 117 (rejecting district court's approach of choosing Third Department law to resolve a split in authority because it was the location of the accident and "where the suit was originally filed.")

6

from certain expenses and fees assessed by the landlord, is void as a matter of law."[3] *Id.* In support of this statement, *Pastena* cited to *Spiegel v. 1065 Park Ave. Corp.*, 305 A.D.2d 204 (1st Dep't 2003).

In *Spiegel*, the First Department considered an original purchaser's claim that the managing agent of her cooperative building was unreasonably withholding consent to sublet because she was entitled to special subletting privileges under her proprietary lease. 305 A.D.2d at 204. The court stated that plaintiff was not entitled to any special subletting privileges and held that "[t]here is no question that lease paragraph 38 and the related by-law provision violate Business Corporation Law § 501(c) by giving *original purchasers* more favorable subletting rights than non-original purchasers." *Id.* at 205 (emphasis added.) For this conclusion *Spiegel* relied on *Wapnick v. Seven Park Ave. Corp.*, 240 A.D.2d 245 (1st Dep't 1997). Similarly, in *Wapnick* a tenant-shareholder sued a cooperative corporation alleging that the corporation violated BCL § 501(c) when it granted special subletting, moving, and assignment rights (mainly exemptions from consent and fee requirements) to original purchasers. 240 A.D.2d. 245. The Court stated that BCL § 501(c) prohibits unequal treatment of shareholders holding the same class of shares and held that "[s]uch prohibited unequal treatment includes . . . the imposition of varying fees depending on whether a shareholder is an *original or subsequent purchaser of shares.*" *Id.* at 246 (emphasis added).

All of these First Department cases[4], including *Pastena*, make clear that under BCL § 501(c) similarly situated shareholders cannot be treated differently. Specifically, original

---

[3] However, the Court did not examine any of plaintiff's claims in the context of BCL § 501(c).

[4] Defendant also relies on *Kraukauer v. Stuyvestant Owners*, (Def's Br. at 15), but that case involved the invalidation of a proprietary lease provision which exempted original purchaser shareholders who lived in the building from subletting requirements and therefore states a rule no different from the *Spiegel* or *Wapnick* courts. *See* Brief for Defendant-Respondent, 2003 WL 25650367 (1st Dept.) at 7; *see also Krakauer v. Stuyvesant Owners, Inc.*, 301 A.D.2d 450, 451 (1st Dep't 2003). Similarly, *Razzano v. Woodstock*, did not involve holders of unsold shares. 111 A.D.3d 522 (1st Dep't 2013). Instead, the

purchasers may not be granted exemptions from sublet requirements that are not also granted to other ordinary shareholders who did not purchase their shares directly from the sponsor. Defendant asks this Court to read *Pastena* as extending BCL § 501(c) beyond original purchasers to all holders of unsold shares. But documents filed in *Pastena* make clear that the plaintiff was an original purchaser. (*See e.g.* Pastena Compl. ¶¶ 10, 14.) Moreover, submissions filed by the plaintiff in the trial court indicate that she was a "tenant-shareholder" when she first purchased the unsold shares from the co-op. (Exhibit D, ECF No. 20-4, ¶ 3.) Given these facts, the *Pastena* court's citation to *Spiegel* after finding that the plaintiff was not an unsold shareholder indicates that the court was considering her status as an original purchaser and was not creating a new rule of law. Moreover, if the First Department had intended to change the law it could have done so explicitly, explained its reasoning, and addressed any contrary case law that it was overruling.

In fact, The First Department has recently confirmed this analysis. In *Bellstell 7 Park Ave., LLC v. Seven Park Ave. Corp.*, the court declined to consider the argument that paragraph 38 was void as a matter of public policy, but stated that if it were to reach the issue it would find this argument "unavailing, as *Pastena* dealt with the section of paragraph 38 relating to privileges granted to 'original purchasers' rather than subsequent holders of unsold shares." 2021 WL 278142 (1st Dep't Jan. 28, 2021). The *Bellstell* court confirmed that *Spiegel* stood for the proposition that "original purchasers (as distinct from holders of unsold shares), could not" be given special privileges over non-original purchasers and stated that "holders of unsold shares are routinely granted special privileges in exchange for their regulatory obligations, as they are, de facto, a different class of stock than an ordinary purchaser". *Id.*

---

*Razzano* court invalidated a sublet policy which was temporally based, allowing "those who purchased their shares before October 2002 to sublet, while prohibiting those who purchased their shares after that date from subletting." *Id.* at 523.

Indeed, other Appellate Division decisions hold the exact opposite of the interpretation Defendant urges here. In *Susser v. 200 East 36th Street Owners Corp.*, the First Department considered an appeal from a tenant-shareholder challenging a cooperative corporation's imposition of sublet restrictions and fees on tenant-shareholders while simultaneously providing exemptions for holders of unsold shares from the same subletting restrictions. 262 A.D.2d 197, 197 (1st Dep't 1999). Plaintiff claimed that such disparate treatment was barred by BCL § 501(c). *Id.* The court held that the "exemption from subletting restrictions and fees in favor of the holders of unsold shares was, however, permissibl[e]." *Id.* The court reasoned that the "exemption of the sponsor, as holder of unsold shares, from defendant cooperative corporation's otherwise applicable strictures as to subletting is, moreover, justified by obligations imposed upon the sponsor that are not shared by other shareholders." *Id.* at 197–198. Such obligations included the sponsor's duty to provide renewal leases to "non-purchasing tenants who remain in possession pursuant to a non-eviction plan. *Id.* at 198. The court found "no basis to conclude that the failure to afford [tenant-shareholders] the same exemption as the sponsor deprives them of equal treatment within the meaning of Business Corporation Law § 501(c)." *Id.* Finally, the court addressed its holding in relation to *Wapnick* and determined that *Wapnick* was not to the contrary because that case involved differential treatment of "similarly situated tenant shareholders." *Id.*

Similarly, in 2016, the First Department upheld a proprietary lease and stipulation of settlement which provided, in part, for disparate treatment of holders of unsold shares from other shareholders in terms of voting rights. *Tiemann Place Realty, LLC v. 55 Tiemann Owners Corp.*, 141 A.D.3d 56, 63 (1st Dep't 2016). The court reasoned that because holders of unsold shares in cooperative apartment complexes effectively constituted separate classes of

shareholders, treating them differently from ordinary shareholders did not violate BCL § 501(c) which provides that each share must be equal to every other share of same class. *Id.*

Finally, in *Yatter v. Continental Owners Corp.*, the Second Department affirmed a trial court decision that declared a proprietary lessee to be a holder of unsold shares and thus exempt from consent and sublet fee requirements. 22 A.D.3d 573, 573 (2d Dep't 2005). The court applied "'ordinary contract principles to interpret the terms'" of the offering plan and proprietary lease to determine if the lessee was a holder of unsold shares. *Id.* at 574 (citing *Kralik v. 239 E. 79th St. Owners Corp.*, 5 N.Y.3d 54, 59 (2005)). Citing to *Susser*, the court stated that there was "no merit to the defendant's contention that Business Corporation Law § 501(c) prohibits an offering plan or proprietary lease from exempting a holder of unsold shares from sublet fees or board-approval requirements applicable to other shareholders." *Id.*

This line of cases establishes the general rule in New York that holders of unsold shares are of a different class from tenant shareholders (such as original purchasers). Thus, BCL § 501(c) does not bar the provision of special rights to holders of unsold shares because BCL § 501(c) only prohibits disparate treatment of shares that are "of the same class." This Court should "apply the law as interpreted by [New York's] intermediate appellate courts unless [it] find[s] persuasive evidence that the [New York Court of Appeals] . . . would reach a different conclusion." *Blake v. Gonzales*, 481 F.3d 152, 157 n.3 (2d Cir. 2007) (Sotomayor, J.); *see also Bounkhoun v. Barnes*, No. 15-CV-631-A, 2018 WL 1805552, at *4 (W.D.N.Y. Apr. 17, 2018). The parties have not presented, and this Court has not found, "persuasive evidence" that the New York Court of Appeals would interpret BCL § 501(c) any differently than those Appellate Divisions, that have directly analyzed the issue.

Applying this rule to the case at hand, Dunnegan has adequately pleaded his breach of contract claims. Dunnegan alleges that he is a holder of unsold shares and that under the Proprietary Lease he is exempt from subletting consent requirements. (Compl. ¶ 1.) Under both the terms of the Proprietary Lease and the New York Attorney General's regulations, as a holder of unsold shares Dunnegan must not occupy the apartments he owns, lest he lose his status as the holder of unsold shares. (*See* Proprietary Lease ¶ 38(b); *see also* 13 NYCRR 18.3[w][1] (stating that "[a] holder of unsold shares is the sponsor or any individual designated to hold unsold shares by the sponsor. Such shares shall cease to be unsold shares when purchased by a purchaser for occupancy.") Dunnegan also alleges that when he purchased the unsold shares in Defendant's building he was subject to the rights of rent-controlled tenants, (Compl. ¶¶ 12–13, 16), and was required to offer renewal leases to these tenants until they surrendered their occupancy rights to the apartment. (Compl. ¶¶ 12, 13, 16, 21, 22); *see also* N.Y. Gen. Bus. Law 352-eeee.

Defendant's attempt to distinguish *Susser* as cabined only to sponsors is unavailing. (Def's Br. at 11 n.2.) *Susser* makes clear that "sponsor[s] *as holders of unsold shares*" are not similarly situated to tenant-shareholders given their obligations to offer these tenants renewal leases. *Susser*, 262 A.D.2d at 198. Similarly, Defendant's reliance on *Bregman v. 111 Tenants Corp.* is misplaced. In *Bregman*, the plaintiff claimed that she was granted an unfettered right to sublet her apartments, but such subletting rights were not provided for in the corporate documents. *Bregman v. 111 Tenants Corp.*, 97 A.D.3d 75, 81–82 (1st Dep't 2012). The First Department held that plaintiff did not have perpetual subletting rights and stated that BCL § 501(c) "precludes . . . that a shareholder purchasing *common shares* may, by contract with the cooperative, obtain special rights that could not be granted in the corporate documents themselves." *Id.* at 83 (emphasis added.) This passage underscores the difference between holders of unsold shares and common

11

shareholders, such as tenant-shareholders. By their very nature and concurrent obligations, unsold shares are not common shares. *Bregman* simply does not, as Defendant argues, "invalidate co-op governing documents as violating the New York Business Corporation Law." (Def's Br. at 8.)

Because the cases Defendant relies on are inapposite and *Pastena* does not change the general rule that holders of unsold shares are a different class of shareholders from tenant shareholders, Paragraph 38 of the Proprietary Lease is not void as a matter of New York law. Accordingly, Plaintiff has sufficiently plead his breach of contract claims by alleging that he is a holder of unsold shares, who is not similarly situated to tenant-shareholders in the co-op.[5]

## IV.   PLAINTIFF'S FIDUCIARY DUTY CLAIM IS DISMISSED

Dunnegan separately alleges that Defendant breached its fiduciary duty to him as a shareholder when it implemented the sublet policy. (Compl. ¶ 43.) Under New York law, a corporation does not have fiduciary duties to its shareholders. *Gates v. BEA Assocs., Inc.*, No. 88 CIV. 6522 (JSM), 1990 WL 180137, at *6 (S.D.N.Y. Nov. 13, 1990); *see also Fletcher v. The Dakota, Inc.*, 99 A.D.3d 43, 54 (1st Dept 2012) (holding that "[b]ecause the Dakota is a corporation, it owes no fiduciary duty to its shareholders."); *Osberger v. 18 Mercer Equity Inc.*, 31 N.Y.S.3d 922 (N.Y. Civ. Ct. 2015) ("It has long been recognized in the First Department that a cooperative corporation does not owe a fiduciary duty to its shareholders.") Accordingly, Dunnegan's breach of fiduciary duty claim is dismissed.

---

[5] For these same reasons Dunnegan also adequately alleges that Defendant breached a 2006 consent judgment entered in New York State Supreme Court. (Compl. ¶¶ 18–19, 36–40.) *See Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d 571, 574 (2d Cir. 1983) ("For purposes of enforcement, a consent judgment should be construed and interpreted as a contract.")

## V. CONCLUSION

Defendant's motion to dismiss the breach of contract claims, (ECF No. 14), is DENIED. Defendant's motion to dismiss the breach of fiduciary duty claim, (ECF No. 14), is GRANTED. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
  February 10, 2021

SO ORDERED.

GEORGE B. DANIELS
United States District Judge