UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

WILLIAM DUNNEGAN,                              :

                  Plaintiff,   :

          -against-                              :        20 Civ. 2418 (GBD)

220 EAST 54th STREET OWNERS, INC.,   :        ECF Case

               Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FINAL JUDGMENT, DECLARATORY JUDGMENT
AND PERMANENT INJUNCTION BY CONSENT**

IT IS HEREBY STIPULATED and agreed, by and between the undersigned parties,

subject to the approval of the Court, that the following facts are true:

**Nature of the Action**

1.      Plaintiff William Dunnegan ("Dunnegan") is a shareholder of 220 East 54th Street

Owners, Inc. ("220 Owners"), a co-op apartment building. Dunnegan owns "unsold shares" that

are allocated to two apartments. The governing documents of 220 Owners, including the Offering

Plan and Proprietary Lease ("Governing Documents"), entitle owners of "unsold shares" to certain

valuable rights. These rights include the right to sublet the apartments without the consent of 220

Owners.

2.      On March 2, 2020, 220 Owners changed the sublet policy in such a way that it

would have extinguished the sublet rights of owners of "unsold shares," including Dunnegan, on

the ground that they were "void as against public policy" ("March 2 Modifications") and

incorporated said changes into the house rules of 220 Owners.  By making the March 2

Modifications, 220 Owners (a) breached its contract with Dunnegan, and (b) violated a declaratory

judgment that ended a prior lawsuit between Dunnegan and 220 Owners ("2006 Declaratory Judgment").

3.      Dunnegan brought this action to obtain (a) a declaration that the March 2 Modifications violated the rights of Dunnegan under the Governing Documents and the 2006 Declaratory Judgment, (b) an injunction restraining 220 Owners and its officers, agents, servants, employees and attorneys and those other persons in active concert or participation with any of them from impairing the rights of Dunnegan under the Governing Documents and the 2006 Declaratory Judgment, and (c) a monetary judgment against 220 Owners based upon its unlawful actions. The Court understands that the parties have reached a settlement.

## Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over each of the claims in this action based upon 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties to this action and the amount in controversy exceeds $75,000 exclusive of interests and costs.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because 220 Owners resides in this District.

6.      This Court has personal jurisdiction over 220 Owners pursuant to New York CPLR § 301 because 220 Owners owns real property in this State.

## Background of this Action

**A.      The Parties.**

7.      Dunnegan is natural person and a citizen of the State of New Jersey, residing in Ho-Ho-Kus, New Jersey. Dunnegan is, and has been since June 2, 1981, a member of the Bar of this Court.

8.     220 Owners is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York. 220 Owners owns the real property located at 220 East 54th Street, New York, New York.

**B.     The Conversion of the Premises at 220 East 54th Street to a Co-op.**

9.     On or about August 14, 1981, as a result of an Offering Plan approved by the Attorney General of the State of New York, the premises located at 220 East 54th Street, New York, New York, converted from a rental property to a co-op.

10.     In accordance with the Offering Plan, 220 East 54th Street Co. (the "Sponsor") owned all the shares of 220 Owners and offered to sell to each existing rent regulated tenant the shares of 220 Owners and assign the proprietary lease associated with the apartment in which the tenant resided.  If the tenant did not accept the Sponsor's offer, the Sponsor retained the right to sell "unsold shares" allocable to those apartments to investors, who would own those "unsold shares" and the proprietary lease associated with those apartments, subject to the rights of the rent regulated tenants of those apartments.

11.     To induce investors to purchase the "unsold shares" and the proprietary lease associated with an apartment, the Governing Documents provided certain rights to purchasers of "unsold shares," including the right to sublet the apartment (after the rent-stabilized or rent-controlled tenant vacated it) without the approval of 220 Owners.  The Sponsor thereafter sold the "unsold shares" to investors.

**C.     Dunnegan's Purchase of the "Unsold Shares" Allocated to Apartment 6L.**

12.     On or about December 3, 1986, Dunnegan purchased 49 "unsold shares" of 220 Owners that were allocated to the proprietary lease for Apartment 6L, subject to the rights of the rent-stabilized tenant for the apartment. Apartment 6L is a studio apartment.

13.     The rent-stabilized tenant remained in occupancy, paying below market rent, until on or about June 1989. At that time, the tenant surrendered all rights concerning Apartment 6L.

14.     Dunnegan thereafter sub-leased Apartment 6L, under a series of sub-leases, with the knowledge of 220 Owners, but without requesting its consent, because its consent was not required under the Governing Documents.

15.     Dunnegan intends to continue to sublease Apartment 6L indefinitely.

**D.    Dunnegan's Contract to Purchase the
        Unsold Shares Allocated to Apartment 12A.**

16.     On or about May 2005, Dunnegan entered into a contract to purchase 150 "unsold shares" of 220 Owners that were allocated to Apartment 12A, subject to the rights of the rent-controlled tenant. Apartment 12A is a two bedroom/two bath apartment.

17.     Upon Dunnegan informing 220 Owners that he had purchased the Unsold Shares allocated to Apartment 12A, 220 Owners represented to Dunnegan that it would not approve him as a purchaser, even though Dunnegan was an existing shareholder in 220 Owners. 220 Owners ultimately informed Dunnegan that 220 Owners would not approve his purchase because it would make Dunnegan one of the largest shareholders, if not the largest shareholder, of 220 Owners.

**E.    The Prior Litigation and the 2006 Declaratory Judgment.**

18.     On or about August 2005, Dunnegan, and the seller of the "unsold shares" for Apartment 12A sued 220 Owners in the Supreme Court of the State of New York for the County of New York. The complaint alleged that 220 Owners had breached its fiduciary duty to Dunnegan and to the seller.

19.     The parties settled the action by consenting to the Court's entry of the 2006 Declaratory Judgment, filed January 3, 2006, which provided in applicable part:

"ORDERED, ADJUDGED and DECREED that the shares of [third party] in [220 Owners] allocated to apartment 2H and **the shares of Dunnegan allocated to apartments 12A and 6L** on the date hereof (i) are Unsold Shares with the meaning of paragraph 38 of the proprietary leases of [third party] and Dunnegan, and (ii) **may be assigned or sublet without any consent of [220 Owners], including its Board of Directors, Shareholders and Managing Agent and without payment of any discriminatory fee** by [third party] or Dunnegan to [220 Owners] or its Managing Agent, provided that [third party] or Dunnegan, as the case may be, are not then in default under the provisions of their respective proprietary leases…" (Emphasis added.)

20.     In connection with the consent to the 2006 Declaratory Judgment, Dunnegan completed his purchase of the "Unsold Shares" allocated to Apartment 12A.

21.     The rent-stabilized tenant remained in occupancy, paying below market rent, until on or about June 2012.

22.     In or about June 2012, the rent-controlled tenant surrendered all rights concerning Apartment 12A.

23.     Dunnegan thereafter sub-leased Apartment 12A with the knowledge of 220 Owners, but without its consent, because its consent was not required under either the Governing Documents or the 2006 Declaratory Judgment.

24.     Dunnegan intends to continue to sublease Apartment 12A indefinitely.

**F.     The March 2 Modifications.**

25.     On March 5, 2020, Dunnegan received an e-mail from the managing agent of 220 Owners, that provided:

"In light of a recent appellate court decision in our jurisdiction and governing statute, [220 Owners] is now obligated to treat all shareholders equally with respect to subletting, including the assessment of fees.

**Exemptions once enjoyed by holders of unsold shares pursuant to paragraph 38 of the co-op's proprietary lease have been deemed void as against public policy.** Consequently, the board has recently amended its sublet policy to reflect this change, including the consent requirements and assessment of fees on all subletting shareholders, including holders of unsold shares.

5

The board resolution ratifying this amendment of the sublet policy along with other recent amendments is enclosed or attached herein." (Emphasis added.)

26.     220 Owners thereafter incorporated the March 2 Unilateral Modifications into its House Rules.

27.     On March 10, 2020, Dunnegan e-mailed the managing agent of 220 Owners, requesting that she identify the "recent appellate court decision" referenced in her e-mail.

28.     On March 11, 2020, Dunnegan received in response an e-mail from Andrew Stern, Esq., an attorney for 220 Owners, that attached a copy of *Pastena v 61 W. 62 Owners Corp.,* 169 A.D.3d 600 (1st Dep't 2019), and identified it as the "recent appellate court decision" referred to in the earlier e-mail. This was a one-page memorandum decision from February 26, 2019, more than a year before 220 Owners modified the house rules and sublet policy.

29.     In making its March 2 Modification, 220 Owners breached its contractual duty to Dunnegan.

### Conclusions of Law

The Court makes the following conclusions of law with the consent of the parties:

1.     The Governing Documents constitute a contract between 220 Owners and Dunnegan.

2.     Paragraph 38 of the Proprietary Lease is valid and enforceable and is not "void as against public policy" as applied to Dunnegan pursuant to the Court's Memorandum Decision and Order of February 10, 2021 and its Memorandum Decision and Order of May 12, 2021.

3.     The March 2 Modifications are a breach of contract and Dunnegan is entitled to a declaration that the March 2 Modifications are a breach of contract to wit the Governing Documents, specifically Paragraph 38 thereof.

4.     If 220 Owners takes any action based upon the March 2 Modifications, in a breach of the contract formed by the Governing Documents, Dunnegan will sustain irreparable injury, for which a monetary judgment will not be a sufficient remedy.  Dunnegan is therefore entitled to an injunction restraining 220 Owners from taking any action against Dunnegan as a result of the March 2 Modifications.

5.     The March 2 Modifications are in violation of Dunnegan's rights set forth in the 2006 Declaratory Judgment.

6.     In the lawsuit that led to the 2006 Declaratory Judgment, 220 Owners did not challenge the legality of Dunnegan's rights as an owner of "unsold shares," based upon public policy or otherwise.  Rather, 220 Owners contracted that Dunnegan was an owner of "unsold shares" and that:

> "**the shares of Dunnegan allocated to apartments 12A and 6L** on the date hereof (i) are Unsold Shares with the meaning of paragraph 38 of the proprietary leases of Freedman and Dunnegan, and (ii) **may be assigned or sublet without any consent of [220 Owners], including its Board of Directors, Shareholders and Managing Agent and without payment of any discriminatory fee**…"  (Emphasis added.)

**7.**     The March 2 Modifications are a breach of the contract set forth in the 2006 Declaratory Judgment.

## Declaratory Judgment

It is hereby DECLARED that the March 2 Modifications violated the rights of Dunnegan under the Governing Documents and the 2006 Declaratory Judgment.

## Permanent Injunction

It is hereby ORDERED that 220 Owners, its agents, servants, employees and attorneys, and those persons in active concert with any of them who receive actual knowledge of this order by personal service or otherwise, be, and hereby are, enjoined from:

1.      Impairing the rights of Dunnegan as a holder of unsold shares to sublet or assign Apartment 6L and/or 12A as set forth in in the Governing Documents, specifically Paragraph 38 of the Proprietary Lease and/or the 2006 Declaratory Judgment, through House Rules or otherwise.

2.      Impairing the right of Dunnegan under Paragraph 38 of the Proprietary Lease and/or the 2006 Declaratory Judgment to sell his unsold shares appurtenant to Apartment 6L and/or 12A, or assign any proprietary lease allocated to Apartment 6L and/or 12A provided his shares remain Unsold Shares as defined by Paragraph 38(a) of the Proprietary Lease, a copy of which is attached as Exhibit A hereto and made a part hereof as if set forth in full.

3.      Impairing the right of Dunnegan under Paragraph 38 of the Proprietary Lease and/or the 2006 Declaratory Judgment to sublease Apartment 6L and/or 12Aprovided his shares remain Unsold Shares as defined by Paragraph 38(a) of the Proprietary Lease.

4.      Charging, or attempting to charge, Dunnegan any amount in connection with any sale of shares or the assignment of any proprietary lease allocated to Apartment 6L and/or 12A in violation of Paragraph 38 of the Proprietary Lease and/or the 2006 Declaratory Judgment provided his shares remain Unsold Shares as defined by Paragraph 38(a) of the Proprietary Lease.

5.      Charging or attempting to charge Dunnegan any amount in connection with any sublease of Apartment 6L and/or 12A in violation of Paragraph 38 of the Proprietary Lease and/or the 2006 Declaratory Judgment provided his shares remain Unsold Shares as defined by Paragraph 38(a) of the Proprietary Lease.

6.      Discriminating against Dunnegan because he is a holder of "unsold shares."

### Retention of Jurisdiction

This action is dismissed except that the Court shall retain jurisdiction to enforce this final

judgment, declaratory judgment, and permanent injunction.

Dated:  New York, New York
         June 15, 2021

                                        DUNNEGAN & SCILEPPI LLC

                                        By___s/Richard Weiss_____
                                           Richard Weiss (RW4039)
                                           rw@dunnegan.com
                                        Attorneys for Plaintiff
                                        437 Madison Avenue, 24th Floor
                                        New York, New York 10022
                                        (212) 332-8300


                                        TANE WATERMAN & WURTZEL, P.C.


                                        _____
                                        By:    Andrew D. Stern (AS5765)
                                               Moshe Bobker (MB1090)
                                        120 Broadway, Suite 948
                                        New York, New York 10271
                                        Tel: (212) 766-4000
                                        Fax: (212) 766-4022
                                        astern@tww.nyc
                                        mbobker@tww.nyc


                                        ROMER DEBBAS LLP


                                        _____
                                        Emil A. Samman (ES8748)
                                        275 Madison Avenue, Suite 801
                                        New York, New York 10016
                                        Tel: (212) 888-3100
                                        Fax: (212) 888.3201
                                        esamman@romerdebbas.com

                                        *Counsel for*
                                        *220 East 54TH Street Owners, Inc.*

SO ORDERED:



_____
     George B. Daniels
     U.S.D.J.


9